[No. S098233. Feb. 27, 2003.]

MAURICE ALFORD et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

**COUNSEL**

Steven J. Carroll, Public Defender, Matthew C. Braner, Gary Gibson and Courtney Cutter, Deputy Public Defenders, for Petitioner Maurice Alford.

Craig J. Leff for Petitioner Donny Love.

Michael P. Judge, Public Defender (Los Angeles), Albert J. Menaster and Mark G. Harvis, Deputy Public Defenders, as Amici Curiae on behalf of Petitioner Maurice Alford.

Kimiko Burton and Jeff Adachi, Public Defenders (San Francisco), Randall Martin, Chief Attorney, and Stephen L. Rosen, Head Attorney, as Amici Curiae on behalf of Petitioner Maurice Alford.

No appearance for Respondent.

Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, Shannon M. Thomas, Carol A. Trujillo and Paul E. Cooper, Deputy City Attorneys, for Real Party in Interest City of San Diego.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Anthony Lovett, Deputy District Attorneys, for Real Party in Interest the People.

Steve Cooley, District Attorney (Los Angeles), George M. Palmer, Head Deputy District Attorney, and Brentford J. Ferreira, Deputy District Attorney, as Amici Curiae on behalf of Real Parties in Interest.

Jones & Mayer, Gregory P. Palmer and Krista MacNevin Jee for 79 California Cities, California State Sheriffs' Association, California Police Chiefs Association and California Police Officers' Association as Amici Curiae on behalf of Real Party in Interest City of San Diego.

Bobbitt & Pinckard, Everett L. Bobbitt and Sanford A. Toyen for San Diego Police Officers Association as Amicus Curiae.

## OPINION

**WERDEGAR, J.**—Petitioners Maurice Alford and Donny Love were arrested on drug charges, the specifics of which are not pertinent to this appeal. Because petitioners' narrative of events leading to their arrest differed from that of the arresting officers, they sought to challenge the officers' credibility. Petitioners accordingly moved, in superior court, for *Pitchess* discovery of past complaints made to the San Diego Police Department regarding any incidents of dishonesty, excessive force, unnecessary violence, racist remarks, or similar misconduct on the part of the arresting officers. (See generally *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113

Cal.Rptr. 897, 522 P.2d 305]; Evid. Code, §§ 1043, 1045.)[1] The superior court initially granted the requested discovery as to two prior incidents but, after reconsidering its ability to fashion an appropriate protective order, reversed itself and denied the motion. On petitioners' application to the Court of Appeal for a writ of mandate, that court issued a writ directing the superior court to fashion an order granting such disclosure on the condition that petitioners' attorneys not disseminate the information so disclosed beyond the criminal proceeding, and permitting the prosecuting attorney to be heard on the motion and to receive the information so disclosed.

Contending the conditions were unauthorized by section 1045, subdivision (e) (hereafter section 1045(e)), petitioner Alford sought review in this court. We granted review, limited to the questions whether the protective order required by section 1045(e) must restrict use of *Pitchess* information[2] to the proceeding in which disclosure is sought, and whether the prosecutor has standing to be heard on the *Pitchess* motion and to obtain information disclosed to the defense pursuant to such motion.

For the reasons that follow, we conclude the decision of the Court of Appeal must be reversed.

## DISCUSSION

### A. *Statutory Background*

Recently, in *People v. Mooc* (2001) 26 Cal.4th 1216 [114 Cal.Rptr.2d 482, 36 P.3d 21] and *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1 [124 Cal.Rptr.2d 202, 52 P.3d 129], we have had occasion to review the background of the relevant statutory provisions; we do so again here in furtherance of our analysis. As this court stated in *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74 [260 Cal.Rptr. 520, 776 P.2d 222]:

"In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as '*Pitchess* motions' (after our decision in *Pitchess* v. *Superior Court*[, *supra*,] 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305])[3] through the enactment of Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. The Penal Code provisions define 'personnel records' (Pen. Code, § 832.8) and provide that

---

[1]Unless otherwise noted, all further statutory references are to the Evidence Code.

[2]I.e., the information disclosed pursuant to a *Pitchess* motion. The parties have not briefed, and we express no views concerning, the treatment of information developed as a result of the receipt of information disclosed pursuant to a *Pitchess* motion.

[3]In *Pitchess v. Superior Court, supra*, 11 Cal.3d 531, we held that a criminal defendant has a limited right to discovery of peace officer personnel records in order to ensure "a fair trial

such records are 'confidential' and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.) Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail. As here pertinent, section 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, '(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records.'

"A finding of 'good cause' under section 1043, subdivision (b) is only the *first* hurdle in the discovery process. Once good cause for discovery has been established, section 1045 provides that the court shall then examine the information 'in chambers' in conformity with section 915 (i.e., out of the presence of all persons except the person authorized to claim the privilege and such other persons as he or she is willing to have present), and shall *exclude* from disclosure several enumerated categories of information, including: (1) complaints more than five years old, (2) the 'conclusions of any officer investigating a complaint . . .' and (3) facts which are 'so remote as to make disclosure of little or no practical benefit.' (§ 1045, subd. (b).)

"In addition to the exclusion of specific categories of information from disclosure, section 1045 establishes general criteria to guide the court's determination and insure that the privacy interests of the officers subject to the motion are protected. Where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the statute *requires* the court to 'consider whether the information sought may be obtained from other records . . . which would not necessitate the disclosure of individual personnel records.' (§ 1045, subd. (c).) The law further provides that the court may, in its discretion, 'make *any order which justice requires* to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.' (§ 1045, subd. (d), italics added.) And, finally, the statute mandates that in any case where disclosure is permitted, the court '*shall* . . . order that the records disclosed or discovered shall not be used for any purpose other than a court proceeding pursuant to applicable law.' (§ 1045, subd. (e), italics added.)

"As statutory schemes go the foregoing is a veritable model of clarity and balance. Section 1043 clearly requires a showing of 'good cause' for discovery in two general categories: (1) the 'materiality' of the information or

and an intelligent defense in light of all relevant and reasonably accessible information." (*Id.* at p. 535.)

records sought to the 'subject matter involved in the pending litigation,' and (2) a 'reasonable belief' that the governmental agency has the 'type' of information or records sought to be disclosed. (§ 1043, subd. (b).)

"The relatively low threshold for discovery embodied in section 1043 is offset, in turn, by section 1045's protective provisions which: (1) explicitly 'exclude from disclosure' certain enumerated categories of information (§ 1045, subd. (b)); (2) establish a procedure for in camera inspection by the court prior to any disclosure (§ 1045, subd. (b)); and (3) issue a forceful directive to the courts to consider the privacy interests of the officers whose records are sought and take whatever steps 'justice requires' to protect the officers from 'unnecessary annoyance, embarrassment or oppression.' (§ 1045, subds. (c), (d) & (e).)

"The statutory scheme thus carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to his defense. The relatively relaxed standards for a showing of good cause under section 1043, subdivision (b)—'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought—insure the production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure. As a further safeguard, moreover, the courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead . . . that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question. [Citations.]" (*City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at pp. 81-84, fns. omitted.)

A motion for discovery of peace officer personnel records is addressed to the sound discretion of the trial court, reviewable for abuse. (*Pitchess v. Superior Court, supra,* 11 Cal.3d at p. 535; *People v. Gill* (1997) 60 Cal.App.4th 743, 749 [70 Cal.Rptr.2d 369].)

With these principles in mind, we turn to the specific issues presented in this case.

B. *Scope of Mandatory Protective Order Under Section 1045(e)*

Section 1045(e) provides: "The court shall, in any case or proceeding permitting the disclosure or discovery of any peace or custodial officer

records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law." The parties disagree about the meaning of the phrase, "a court proceeding pursuant to applicable law." Petitioner contends it refers to *any* court proceeding, whether or not in the case in which disclosure was sought, provided such use complies with applicable provisions of the law of evidence. The city attorney, on behalf of the custodian of records, argues that, in the context of the *Pitchess* scheme of which it is a part, the phrase refers to the case for which the information was sought.

 Our role in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441].) Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230 [99 Cal.Rptr.2d 570, 6 P.3d 228].) We do not, however, consider the statutory language in isolation, but rather examine the entire substance of the statute in order to determine the scope and purpose of the provision, construing its words in context and harmonizing its various parts. (*People v. Acosta* (2002) 29 Cal.4th 105, 112 [124 Cal.Rptr.2d 435, 52 P.3d 624].)

Petitioner contends the legislative history of section 1045(e) strongly supports his interpretation. He points out that twice, in 1978 and again in 1982, the Legislature considered and rejected an amendment to section 1045 that would have restricted use of the information disclosed on a *Pitchess* motion to the particular case in which the disclosure was made. As introduced on January 27, 1978, Senate Bill No. 1436 (1977-1978 Reg. Sess.), the original legislation governing release of information from peace officer personnel records, contained no provision for a protective order. Then, on August 7, 1978, the bill was amended to include the following language: "(g) Whenever a court orders disclosure of records or information obtained therefrom pursuant to this section, use of such records or information shall be limited to the litigation in aid of which access to the records or information was sought, and any records obtained pursuant to such an order of disclosure or any copies thereof shall be returned to the department or governmental agency upon conclusion of that litigation." (Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, italics omitted.) A subsequent Assembly amendment to Senate Bill No. 1436, on August 30, 1978, however, deleted that language and replaced it with that currently in section 1045, subdivision (d): "Upon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause

showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression."

Some four years later, the Legislature added section 1045(e), the provision for mandatory protective orders at issue here. As introduced on March 30, 1981, Senate Bill No. 1065 (1981-1982 Reg. Sess.) contained language limiting use of disclosed records or information therefrom to the proceeding identified in the motion: "(e) The court shall, in any case or proceeding permitting the disclosure or discovery of any peace officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose or in any proceeding other than those identified in the motion pursuant to Section 1043." The Assembly subsequently amended the bill to remove the limitation on use of disclosed material to the proceeding identified in the motion, replacing it with the language currently found in section 1045(e). (Assem. Amend. to Sen. Bill No. 1065 (1981-1982 Reg. Sess.) Aug. 2, 1982.)[4]

Petitioner urges that, having twice considered and rejected the very limitation for which the city attorney here advocates, the Legislature evidently did not intend that section 1045(e) be interpreted to require a trial court ordering disclosure of *Pitchess* information to order that such information be used only in the proceedings identified in the motion.

We do not find the import of the cited legislative history altogether clear. Examining as a whole the purpose of the 1978 legislation, we find it was intended to respond to officer complaints that *Pitchess* discovery was being ordered for unfounded, anonymous, or very old citizen complaints. Peace officer personnel records also had not been specifically designated as privileged. (See Enrolled Bill Rep. on Sen. Bill No. 1436 (1977-1978 Reg. Sess.).) The legislation addressed these problems by establishing the requirement of a specific showing of good cause for disclosure and recognizing certain exclusions from disclosure. (See §§ 1043, subd. (b), 1045, subd. (b).) The addition of subdivision (d) to section 1045, authorizing protective orders "[u]pon motion seasonably made" and "upon good cause showing the necessity thereof," may have been thought to provide adequate protection against abuses of *Pitchess* discovery.

Such was not the case. The 1982 legislation responded to the concern that disclosure of information from peace officer personnel records would be

---

[4]Petitioner requests that this court take judicial notice of the legislative history of Senate Bill No. 1436 (1977-1978 Reg. Sess.) and Senate Bill No. 1065 (1981-1982 Reg. Sess.). We grant the request. (§§ 452, subds. (a), (c), 459.)

used in litigation against officers and the agencies employing them. (See Enrolled Bill Rep. on Sen. Bill No. 1065 (1981-1982 Reg. Sess.).) Notably, the bill as introduced included severe restrictions on any disclosure, proposing to limit the discovery authorized in sections 1043 and 1045 specifically to cases involving resisting arrest, assault, or battery, where claims of officer violence might be expected to be relevant. (Sen. Bill No. 1065 (1981-1982 Reg. Sess.) as introduced Mar. 30, 1981, § 1.) Evidently deemed too narrow, this provision was later revised to limit discovery to any case in which a defendant might reasonably assert self-defense and excessive force. (Sen. Amend. to Sen. Bill No. 1065 (1981-1982 Reg. Sess.) June 14, 1981.) When, finally, the Legislature gave up attempting to enumerate specific types of cases in which *Pitchess* discovery could be ordered, it revised section 1045(e) to provide that use of any records disclosed be limited to "a court proceeding pursuant to applicable law" rather than prohibiting their use, as the amending legislation originally would have done, "in any proceeding other than those identified in the motion pursuant to Section 1043" (Assem. Amend. to Sen. Bill No. 1065 (1981-1982 Reg. Sess.) Aug. 2, 1982), i.e., the section where the proposed narrow restrictions had been specified. The language modification, then, did not necessarily mean that disclosure was *not* limited to the case in which it was being sought; rather, we surmise it meant the Legislature was not defining substantively what kind of case that might be.

The Court of Appeal in this case reasoned that because section 1045(e) is part of an overall statutory scheme that carefully balances peace officers' privacy interests in their personnel records against defendants' rights of access to information relevant to their defense, and because disclosure of information contained in such records is permitted only on a showing of materiality to a particular case, to interpret the statute as allowing a defendant to share such information with other defendants would defeat the purpose of the balancing process. That court also believed the phrase "applicable law" in section 1045(e) in fact referred to section 1043 and thus signified the Legislature's intent to restrict use of the disclosed information to the proceeding in which it was sought. We agree; like the Court of Appeal we read "applicable law" in this context as referring to the statutory *Pitchess* scheme. Contrary to petitioner's argument, we believe the phrase must mean more than mere compliance with the Evidence Code, as the admission of *any* evidence in a court proceeding must comply with that code. Thus, petitioner's construction tends to reduce the phrase to surplusage, in contravention of the canons of construction. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798-799 [268 Cal.Rptr. 753, 789 P.2d 934].)

As the Court of Appeal reasoned, its interpretation of section 1045(e) harmonizes the entire statutory scheme and retains its effectiveness by

furthering the legitimate interests of both the defendant and the peace officer. (See *People v. Pieters* (1991) 52 Cal.3d 894, 899 [276 Cal.Rptr. 918, 802 P.2d 420].) In contrast, as that court found, petitioner's interpretation conflicts with the confidentiality of officer personnel records, as recognized in Penal Code section 832.7, and the procedural requirements for disclosure of such records set forth in Evidence Code sections 1043 and 1045, subdivisions (a) through (c).

Petitioner contends further that a mandatory protective order limiting use of *Pitchess* material to the case in which it is sought would conflict with the ethical duties of his counsel, the San Diego County Public Defender. Petitioner's argument may be summarized as follows: The public defender's office is essentially a law firm in which each deputy derives his or her authority by delegation from the public defender, whose duties and powers are prescribed by statute. (*Mowrer v. Superior Court* (1969) 3 Cal.App.3d 223, 230-231 [83 Cal.Rptr. 125].) Each member of the office has the ethical duty not to represent conflicting interests (see 59 Ops.Cal.Atty.Gen. 27 (1976); Rules Prof. Conduct, rules 1-100(B), 3-310), and a confidence obtained by one member of the office is treated as held by all members. Thus, according to petitioner, an order directed at one public defender not to reveal *Pitchess* material is the equivalent of an order directing the public defender not to reveal such information to himself or herself. Not only would such an order be untenable, petitioner argues, but it undermines fair representation and encourages inefficiency and duplication of effort, in that members of the public defender's office must feign ignorance of *Pitchess* information personally known to them and instead file repeated *Pitchess* motions in subsequent cases, not "using" previously disclosed information in making showings of good cause for disclosure.

We are unpersuaded. As the city attorney reasons, petitioner's argument fails to identify any impediment to the public defender's ability to represent *him*. ▮▮▮ Moreover, trial courts have broad discretion in ruling on motions to discover police personnel records and, in doing so, as we have discussed, they are implementing a careful balancing process between the directly conflicting, substantial interests of the officer and the defendant. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827 [64 Cal.Rptr.2d 400, 938 P.2d 2]; *People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [56 Cal.Rptr.2d 49, 920 P.2d 1254].) Arguably, this specific statutory judicial obligation supersedes a public defender's office's general rules concerning distribution of authority to deputies or attribution to all deputies of knowledge gained by any one of them.

C. *Prosecutorial Standing and Entitlement to Disclosed Information*

Real party in interest the District Attorney for the County of San Diego argues he has a right, on behalf of the People, to be heard in *Pitchess*

proceedings and to concurrently receive material ordered disclosed after a successful defense motion. In support, the district attorney cites several statutory provisions, none of which explicitly confers the rights he seeks.

 Code of Civil Procedure section 1005, subdivisions (a)(6) and (b), on which the district attorney relies, set forth the formal requirements for notice and hearing on *Pitchess* motions, but are silent with regard to whether notice shall be given to the district attorney, as well as to the governmental agency that holds the records sought. Penal Code section 684, unamended since its enactment in 1872, provides that the People of the State of California are a party to any criminal prosecution, but does not speak to the question of notice. Evidence Code section 1043, subdivision (a) requires service of notice of a *Pitchess* motion on the governmental agency having custody of the records sought, but provides no insight into whether other parties are to be given notice in this context.

The district attorney also relies on the state constitutional guarantee of due process found in article I, section 29 of the California Constitution. The provision, adopted in 1990 as part of Proposition 115, enshrines the People's right to due process of law. Observing that "the central meaning of procedural due process is that parties whose rights are to be affected are entitled to be heard" (*People v. Sutton* (1993) 19 Cal.App.4th 795, 803 [23 Cal.Rptr.2d 632], citing, inter alia, *Fuentes v. Shevin* (1972) 407 U.S. 67, 80 [92 S.Ct. 1983, 1994, 32 L.Ed.2d 556]), the district attorney argues he has a "strong and specific interest in every *Pitchess* discovery motion filed in a criminal prosecution," entitling him to notice, presence and a right to be heard, in that the result of a *Pitchess* hearing may affect the outcome of the underlying criminal action. The Court of Appeal agreed, reasoning that, because the ruling on a *Pitchess* motion may affect the outcome of the whole criminal proceeding, state constitutional due process principles afford the district attorney a right both to notice and hearing, and to receipt of disclosed records.

We have no doubt that, as a party to the underlying criminal proceeding, the district attorney under general due process principles is entitled to notice of the date and place of the hearing on a defense *Pitchess* motion. In this manner, if the court requires clarification or explanation of any matters set forth in the supporting affidavits, it will be able to ask questions of both the defense and the prosecution and thus obtain any information the court deems " 'essential' " to a fair and proper decision. (Cf. *People v. Ayala* (2000) 24

Cal.4th 243, 262 [99 Cal.Rptr.2d 532, 6 P.3d 193].)[5] However, the district attorney, in asserting entitlement to argue the prosecutorial point of view and to receive any information the court orders disclosed, overstates the extent of his legitimate interest in what is essentially a third party discovery proceeding. In a *Pitchess* hearing, the district attorney prosecuting the underlying criminal case represents neither the custodian of records nor their subject, and thus has no direct stake in the outcome. Instructive in this regard is *Bullen v. Superior Court* (1988) 204 Cal.App.3d 22 [251 Cal.Rptr. 32]. In that case, the district attorney purported to appear on behalf of a third party to an underlying criminal prosecution, in mandate proceedings seeking to compel the superior court to vacate its order allowing the defense access to the third party's home for discovery purposes. Finding no statute authorizing the district attorney to represent a third party in discovery proceedings in a criminal action, the *Bullen* court ordered the district attorney's recusal. (*Id.* at p. 25.) Arguably, for a prosecutor to actively challenge the sufficiency of a *Pitchess* movant's good cause showing is to advance the interests of the third party custodian and police officer. The circumstance, moreover, that a successful *Pitchess* motion may yield information leading to evidence admissible in the underlying criminal proceeding does not necessarily give the district attorney an interest in the motion meriting the full panoply of due process rights in *Pitchess* proceedings. Notably, the reciprocal discovery statutes enable the prosecution to prepare to meet the defense case whenever defense receipt of *Pitchess* disclosure ripens into the intent to call a witness. (See Pen. Code, § 1054.3.)

The *Pitchess* procedure is, as noted, in essence a special instance of third party discovery. Another such procedure is reflected in Penal Code sections 1326 and 1327, which empower either party in a criminal case to serve a subpoena duces tecum requiring the person or entity in possession of the materials sought to produce the information in court for the party's inspection. (*People v. Blair* (1979) 25 Cal.3d 640, 651 [159 Cal.Rptr. 818, 602 P.2d 738]; *People v. Superior Court (Barrett), supra,* 80 Cal.App.4th at p. 1315; *Pacific Lighting Leasing Co. v. Superior Court* (1976) 60 Cal.App.3d 552, 560 [131 Cal.Rptr. 559].) In such case, if the custodian of records objects to disclosure of the information sought, the party seeking the information must make a plausible justification or a good cause showing of need therefor. Significantly in this context, the defense is not required, on pain of revealing its possible strategies and work product, to provide the prosecution with

---

[5]We are not suggesting that such notice include the affidavits and/or any other information in support of the *Pitchess* motion. (Cf. *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1320-1321 [96 Cal.Rptr.2d 264] [party seeking discovery of materials in possession of third party by means of subpoena duces tecum not required to provide opposing party with notice of theories of relevancy of materials sought].)

notice of its theories of relevancy of the materials sought, but instead may make an offer of proof at an in camera hearing. (*People v. Superior Court (Barrett), supra,* at pp. 1320-1321.) A defendant's Sixth Amendment right to the assistance of counsel in the preparation of a case for trial likewise encompasses the assistance of, and confidential communication with, experts in preparing a defense. (*Prince v. Superior Court* (1992) 8 Cal.App.4th 1176, 1180 [10 Cal.Rptr.2d 855] [where sufficient semen sample existed to permit independent DNA testing by both prosecution and defense, prosecution expert was not entitled to observe and obtain results of defense testing].) The right logically extends to the opportunity to investigate and develop evidence generally, such as impeachment evidence of the kind at issue here.

■ Nor do we find statutory authority to compel the defense or the trial court to share with the prosecution the fruits of a successful *Pitchess* motion. The prosecution is entitled to discovery from the defense only in accordance with Penal Code sections 1054.3 and 1054.7. (Pen. Code, § 1054, subd. (e); see *People v. Tillis* (1998) 18 Cal.4th 284, 294 [75 Cal.Rptr.2d 447, 956 P.2d 409].) Of course, the prosecution itself remains free to seek *Pitchess* disclosure by complying with the procedure set forth in Evidence Code sections 1043 and 1045.[6] Absent such compliance, contrary to the premise underlying Justice Baxter's concurring and dissenting opinion, peace officer personnel records retain their confidentiality vis-à-vis the prosecution. (Pen. Code, § 832.7; see *People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397, 407 [67 Cal.Rptr.2d 910].)[7]

---

[6]Because we conclude the prosecution has no automatic entitlement to defense-initiated *Pitchess* discovery, we do not address petitioner's further argument that receipt of such information would create an obligation, pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215], to provide the defense, in future cases where the officer in question is a material witness, with whatever disclosed *Pitchess* information bears on the officer's credibility or is significantly exculpatory. To the extent a prosecution-initiated *Pitchess* motion yields disclosure of such information, the prosecutor's obligations, as in any case, are governed by constitutional requirements in the first instance. (See *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304] ["The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. . . . [I]f a statutory discovery scheme exists, these due process requirements operate outside such a scheme. The prosecutor is obligated to disclose such evidence *voluntarily*, whether or not the defendant makes a request for discovery."].) Footnote 8 of Justice Baxter's concurring and dissenting opinion must be understood with these principles in mind.

[7]Insofar as, in most cases, the officer whose personnel records the defense is seeking will be a prosecution witness or affiliated with the prosecution team, the prosecutor may be able to learn of available impeachment material against the officer by interviewing him or her, a possibility not necessarily open to the defense.

DISPOSITION

The judgment of the Court of Appeal is reversed, and that court is directed to issue a writ directing the superior court to vacate its order denying the motion and to reconsider the motion in light of this court's opinion.

George, C. J., and Kennard, J., concurred.

**BAXTER, J.,** Concurring and Dissenting.— I concur fully with the lead opinion insofar as it requires a protective order barring use of *Pitchess*[1] information in any "court proceeding" besides the one in which discovery was ordered. (Evid. Code, § 1045, subd. (e).) The statutory scheme denies participants in *other* actions privileged information where such information was disclosed after the trial court heard argument, held an in camera review, and made a specific finding of "relevan[ce]." (*Id.*, subd. (a).)

However, I cannot join the lead opinion insofar as it concludes the prosecutor in the *same* case (1) is only entitled to notice of the defense *Pitchess* motion, and to answer any questions posed by the trial court, (2) is never allowed to see defense documents supporting the motion, even where such secrecy is unnecessary and where the trial court seeks input on the motion, (3) is never allowed to present the People's litigation interests in the motion absent trial court questioning on the matter, and (4) is never allowed to request and receive copies of *Pitchess* material disclosed to the defense about peace officers who may testify at trial.

The reasoning behind this new rule is largely unexplained. It is also wrong. The lead opinion ignores controlling law and settled practice under the *Pitchess* scheme, which is now three decades old. Consistent with well-established general motion practice, prosecutors have always been afforded *full notice and participation* in the public phase of defense-initiated *Pitchess* hearings. Shared discovery, in appropriate circumstances, is simply an efficient means of allowing both parties to prepare their cases for trial. The lead opinion identifies no law or policy justification for denying the prosecution these rights in every case. I therefore dissent.

A. THE PEOPLE ARE ENTITLED TO FULL NOTICE AND A HEARING WHEN THE DEFENSE SEEKS *PITCHESS* DISCOVERY

Though it views the statutory scheme as silent on the issue, the lead opinion concedes the district attorney must receive notice "of the date and

---

[1]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305], as codified by Penal Code sections 832.7 and 832.8, and Evidence Code sections 1043 through 1045. (See Stats. 1978, ch. 630, §§ 1-3, 5, 6, pp. 2082-2083.)

place of the hearing on a defense *Pitchess* motion" consistent with the due process rights ordinarily afforded to adverse parties. (Lead opn., *ante*, at p. 1044; see *id.*, at p. 1045.) However, for reasons the lead opinion does not explain, the same due process principles do not encompass a related right to see "the affidavits and/or any other information in support of the *Pitchess* motion" (lead opn., *ante*, at p. 1045, fn. 5), or to fully "argue the prosecutorial point of view" (lead opn., *ante*, at p. 1045). According to the lead opinion, the prosecutor's role at the hearing is apparently limited to answering specific trial court questions. Only the custodian of records and the concerned peace officer receive complete copies of the moving papers, and possess an unrestricted right to participate under the lead opinion's approach.

The lead opinion overlooks statutory provisions providing the prosecutor with notice of the whole *Pitchess* motion, and with a meaningful opportunity to respond. The starting point is Evidence Code section 1043, subdivision (a) (Evidence Code section 1043(a)), which requires "written notice to the governmental agency [that] has custody and control of the records," and which directs the agency to "immediately notify the individual whose records are sought." The same section also incorporates the noticed motion rules in Code of Civil Procedure section 1005.

The latter statute confirms that its requirements govern any "Hearing for Discovery of Peace Officer Personnel Records pursuant to Section 1043 of the Evidence Code." (Code Civ. Proc., § 1005, subd. (a)(6).) Critical here is subdivision (b) of Code of Civil Procedure section 1005 (Code of Civil Procedure section 1005(b)). This provision—which the lead opinion never quotes or construes—states that "*all moving and supporting papers* shall be *served and filed* at least 21 calendar days before the hearing," except as otherwise ordered or specifically provided by law. (Italics added.)

These requirements are embedded into California law. Former rule 249(c)(6) of the California Rules of Court[2] (adopted eff. Jan. 1, 1949) states that "[t]he words '*serve and file*' mean . . . proof of prior service . . . *on counsel for each adverse party* who is represented by separate counsel." (Italics added.) Rule 317(a) makes clear that the documents served on opposing counsel (here, the prosecutor) include "*all moving and supporting papers*." (Italics added.)[3]

Here, the People are the "adverse party" (former rule 249(c)(6)) in any criminal case in which the defendant invokes the *Pitchess* scheme. (See Gov.

---

[2]All further unlabeled rule references are to the California Rules of Court.

[3]Former rule 249 was renumbered and substantively amended effective January 1, 2003. (See now rule 299.) In the process, the definitions of various elementary legal terms were deleted, including the phrase "serve and file" appearing in former rule 249(c)(6). (*Id.*, subd.

Code, § 100, subd. (b) [all criminal prosecutions conducted by and for the People]; Pen. Code, § 684 [the People and defendant are opposing parties]; *Department of Corrections v. Superior Court* (1988) 199 Cal.App.3d 1087, 1091, fn. 2 [245 Cal.Rptr. 293] (*Department of Corrections*) ["the adverse party in these criminal proceedings is the People . . . not the . . . third party from whom documents have been subpoenaed" by defendant].) It follows that the district attorney must be "served and filed" with any defense *Pitchess* motion, including "all moving and supporting papers" (Code Civ. Proc., § 1005(b)), and must be allowed to appear and argue on the People's behalf. (See Gov. Code, § 26500 [as public prosecutor, the district attorney represents the People in court].)

This open approach serves the aims of the *Pitchess* scheme. The special notice requirement in Evidence Code section 1043(a) is necessary because the individual officer whose records are sought and the government agency holding the records may not themselves be parties to the action, and may not otherwise have standing to appear. Their express inclusion through the *Pitchess* scheme ensures protection in every case of the privacy interests guarded by the Legislature. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1227 [114 Cal.Rptr.2d 482, 36 P.3d 21] (*Mooc*) [noting the officer's "strong privacy interest" in his personnel file and the need to prevent unnecessary access]; *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84 [260 Cal.Rptr. 520, 776 P.2d 222] (*Santa Cruz*) [even where *Pitchess* motion is granted, courts "further safeguard" the private file by revealing only the dates of incidents and identifying information about complainants and witnesses].)

Contrary to what the lead opinion implies, Evidence Code section 1043(a)'s silence about notice to the People and the district attorney does not limit their participation at the hearing. Because the *Pitchess* scheme applies "in any criminal or civil proceeding" (Pen. Code, § 832.7, subd. (a)), the list of interested participants other than the records custodian and the individual officer differs in every case. Adverse parties like the People separately receive full notice and a hearing under Code of Civil Procedure section 1005(b), which appears in Evidence Code section 1043(a). *Both* statutes apply. Procedural rights afforded to the custodian and officer under the latter

(c)(4) ["presiding judge"], (5) ["party"], (7) ["case"].) It appears that all of these maxims, including the one directing moving parties to "serve and file" all moving and supporting papers on the "adverse party," were deemed so well understood and noncontroversial as to no longer require formal definition. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2002) ¶ 9:82.5, p. 9(1)-39 [confirming without citation to former rule 249(c)(6) that Code of Civil Procedure section 1005(b) requires service on counsel for "*all* parties who have appeared in the action, whether or not the motion seeks relief against such parties"].)

statute exist *in addition to,* not in lieu of, parallel rights afforded to the People and district attorney under the former statute.

Moreover, notice to the adverse party of any motion, *and that party's corresponding right to appear and argue the motion,* are "usually considered essential" even in the absence of express statutory authority. (6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 6, p. 405; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶ 9:2.2, p. 9(1)-2 (rev. #1 2001).) Exceptions may exist where the matter could not possibly "affect the rights of an adverse party" (*McDonald v. Severy* (1936) 6 Cal.2d 629, 631 [59 P.2d 98] [dictum]), or where there is an "overriding" need to hide the contents of the motion or hearing. (*People v. Ayala* (2000) 24 Cal.4th 243, 294 [99 Cal.Rptr.2d 532, 6 P.3d 193] (dis. opn. of George, C. J.) (*Ayala*).)

These principles reflect the disfavored nature of proceedings in which one party is denied a meaningful opportunity to appear and be heard. Such proceedings threaten both the evenhanded nature of judicial rulings, and the truth-seeking function of the courts. (*Ayala, supra,* 24 Cal.4th 243, 262.)[4]

Not surprisingly, the parties followed the law *before* the lead opinion limited the People's right to receive all moving papers and to meaningfully respond at the *Pitchess* hearing. Petitioner Maurice Alford and another man (defendants) were charged with transporting and possessing cocaine base for sale. Besides moving to suppress drugs allegedly found in their possession, defendants jointly sought *Pitchess* discovery of past dishonesty by the arresting officers. Defendants hoped to prove at both the suppression hearing and trial that they had been unlawfully stopped, searched, questioned, and arrested, and that the officers falsely reported and testified that the opposite was true. The district attorney received notice of the discovery motion and attended at least one of two discovery hearings.[5] The issue of prosecutorial participation arose for the first time on appeal only because the trial court, *absent any request by defendants,* summarily prevented the district attorney from debating the scope of the *Pitchess* order. The Court of Appeal found

---

[4]According to *Ayala,* proceedings in which only one party participates can produce " 'a shortage of factual and legal contentions. Not only are facts and law from the [excluded party] lacking, but the moving party's own presentation is often abbreviated because no challenge from the [excluded party] is anticipated at this point in the proceeding. The deficiency is frequently crucial, as reasonably adequate factual and legal contentions from diverse perspectives can be essential to the court's initial decision.' " (*Ayala, supra,* 24 Cal.4th 243, 262.)

[5]The record contains defendants' *Pitchess* motion and counsel's supporting declaration, but no proof of service is attached. Nonetheless, the Court of Appeal stated in its opinion that "the People were properly given notice of the *Pitchess* motion." Defendants did not dispute this factual assertion in seeking rehearing and modification in the Court of Appeal. I therefore accept it as true. (See rule 28(c)(2).)

error, giving the People the full range of procedural protections now under review—the right to notice of the whole motion, to appear and argue the motion, and to receive copies of any *Pitchess* materials disclosed to the defense.

For almost 30 years, other courts and litigants have assumed that the People are entitled to rights similar to those explicitly recognized on appeal here. (E.g., *City of Los Angeles v. Superior Court (Brandon)* (2002) 29 Cal.4th 1, 6 [124 Cal.Rptr.2d 202, 52 P.3d 129] *(Brandon)* [defendant served *Pitchess* motion on both prosecutor and police department]; *Mooc, supra*, 26 Cal.4th 1216, 1222 [both prosecutor and police department litigated defendant's *Pitchess* motion in trial court]; *People v. Memro* (1985) 38 Cal.3d 658, 675 [214 Cal.Rptr. 832, 700 P.2d 446] *(Memro)* [prosecutor litigated defendant's *Pitchess* motion in trial court]; *Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430, 432 [107 Cal.Rptr.2d 642] [both prosecutor and police department opposed defendant's attempt to avoid compliance with *Pitchess* scheme]; *Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 28-29 [239 Cal.Rptr. 264] [prosecutor opposed *Pitchess* motion made by juvenile accused of crime]; *Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823, 826 [133 Cal.Rptr. 325] [juvenile accused of crime served *Pitchess* motion on both prosecutor and police department, each of whom participated in the hearing].) The lead opinion does not acknowledge existing law and practice, or adequately explain its adoption of a new rule at this late date.

### B. THE PEOPLE HAVE LEGITIMATE INTERESTS IN RESPONDING TO DEFENSE ATTEMPTS TO OBTAIN PRIVILEGED *PITCHESS* INFORMATION

The lead opinion insists the People have no direct stake in the proceeding, and that any opposition to defense *Pitchess* discovery would merely "advance the interests of the third party custodian and police officer." (Lead opn., *ante*, at p. 1045.) This argument is used to reject the People's claim that their due process rights encompass both notice and a meaningful opportunity to be heard. The lead opinion also implies the Legislature could not possibly have contemplated prosecutorial involvement in defense *Pitchess* hearings any more extensive than what the lead opinion allows.

Preliminarily, I agree that the chief guardians of a peace officer's right to privacy are the officer himself, and the government agency holding the personnel file and charged with asserting any attendant privilege. Under the special notice provisions of Evidence Code section 1043(a), both the officer and custodian can resist unwarranted attempts by criminal defendants to penetrate the private file.

However, the People have *independent* adversarial concerns that the lead opinion unfairly discounts. In general, the *Pitchess* scheme "carefully balances" the moving party's interest in relevant information against the privacy interests identified above. (*Santa Cruz, supra,* 49 Cal.3d 74, 84.) Barriers to discovery include failure to show "good cause" for in-chambers review (Evid. Code, § 1043, subd. (b)(3)), a finding that the material is not "relevant to the subject matter involved in the pending litigation" (*id.,* § 1045, subd. (a)), and the application of certain "exclu[sions] from disclosure" (*id.,* § 1045, subd. (b)). By creating such finely tuned procedures and standards, and by requiring the balancing of such important competing concerns, the Legislature obviously intended a full and meaningful debate. To the extent it limits or bars the People's participation in the *Pitchess* process, the lead opinion risks depriving trial courts of information " 'essential' " to a fair and proper decision. (*Ayala, supra,* 24 Cal.4th 243, 262.)

District attorneys have long joined record custodians, peace officers, and criminal defendants in litigating defense access to police personnel files. Much like the facts of this case, *Pitchess* disputes typically involve officers who played a significant role in investigating the charged crime. Their character, training, and experience could affect the weight and admissibility of incriminating evidence. (E.g., *Brandon, supra,* 29 Cal.4th 1, 5-6 [officers arrested defendant and interviewed child molestation victim]; *People v. Hughes* (2002) 27 Cal.4th 287, 329-330 [116 Cal.Rptr.2d 401, 39 P.3d 432] [officers questioned defendant at murder scene and then interviewed and arrested him at police station]; *Mooc, supra,* 26 Cal.4th 1216, 1221-1222 [officer was the victim of an alleged jailhouse battery by defendant]; *People v. Jackson* (1996) 13 Cal.4th 1164, 1219-1220 [56 Cal.Rptr.2d 49, 920 P.2d 1254] [officers arrested and questioned defendant and seized evidence of murder]; *Memro, supra,* 38 Cal.3d 658, 674; see *id.* at pp. 669-672 [officers elicited defendant's confession to multiple murder].)

The People have an interest in ensuring that an erroneous *Pitchess* determination does not unfairly jeopardize their ability to obtain a valid conviction at trial, and to prevent reversal on appeal. The lead opinion conflicts with both settled law and practice insofar as it denies the People a meaningful opportunity to protect genuine interests in the underlying case.

### C. NOTHING PREVENTS THE TRIAL COURT FROM SHARING DEFENSE *PITCHESS* DISCOVERY WITH THE PROSECUTION UPON REQUEST

A related issue is whether the trial court may ensure adequate and efficient preparation for trial by granting a prosecutorial request for contemporaneous copies of *Pitchess* items disclosed to the defense. The Court of Appeal said

"yes," but the lead opinion says "no." I am not persuaded by my colleagues' analysis.

The lead opinion finds no statute "compel[ling]" the fruits of a successful *Pitchess* motion to be shared with the prosecution. (Lead opn., *ante,* at p. 1046.) This conclusion is based solely on the reciprocal discovery laws in Penal Code section 1054 et seq., adopted by voters as Proposition 115 in June 1990. The lead opinion insists any information obtained by the defense through court-ordered *Pitchess* discovery need not be divulged until it "ripens into the intent to call a witness." (Lead opn., *ante,* at p. 1045.)

This analysis is incomplete. By its own terms, Proposition 115 governs discovery in criminal cases "except as provided by . . . other express statutory provisions." (Pen. Code, § 1054, subd. (e).) One such provision is the *Pitchess* scheme, which regulates privileged information that must be sought by court order from disinterested third persons. (*Albritton v. Superior Court* (1990) 225 Cal.App.3d 961, 963 [275 Cal.Rptr. 314] [holding *Pitchess* scheme coexists with Prop. 115 as an independent discovery measure]; see *People v. Superior Court* (*Barrett*) (2000) 80 Cal.App.4th 1305, 1315 [96 Cal.Rptr.2d 264] (*Barrett*) [noting subpoena duces tecum statutes regulate discovery from nonparties independent of Prop. 115].) Aside from defense discovery obligations under Proposition 115, the question is whether the *Pitchess* scheme precludes shared trial court discovery of the kind at issue here.

As the lead opinion explains (lead opn., *ante,* at pp. 1040-1043), the statutory scheme protects privileged information after it has been found relevant and ordered disclosed in a particular case. Evidence Code section 1045, subdivision (e) requires issuance of an order preventing use of *Pitchess* material *outside* the "court proceeding" in which it was obtained. This provision effectively prevents litigants in one action from sharing *Pitchess* discovery with litigants in other actions. However, no similar provision blocks a court-supervised exchange of *Pitchess* information in the *same* case.

Indeed, the lead opinion seems to concede that the People are virtually guaranteed access to *Pitchess* information obtained by the defense if the district attorney later brings his own *Pitchess* motion. (Lead opn., *ante,* at p. 1046.) The reason is that relevance is a two-way street. Meritorious defense claims that *Pitchess* material might impeach prosecution witnesses or undermine their factual accounts necessarily implies that the prosecution could use the same material to defend the credibility of its witnesses and support its theory of the case.

The lead opinion's suggestion—unsupported by authority—that each party *must* separately file a *Pitchess* motion targeting the same records defies common sense. Such duplication risks unnecessary delay of the underlying action and wastes the time and resources of (1) the government agency holding the disputed records, (2) the peace officer whose records are sought, (3) counsel for these two participants (here, the city attorney), and (4) the trial court. In analogous situations where an accused obtains in camera review of privileged records subpoenaed from a third person, and where the trial court reveals the content of such records over the People's objection, "counsel on both sides" have received copies in order to prepare for trial. (*People v. Webb* (1993) 6 Cal.4th 494, 516 [24 Cal.Rptr.2d 779, 862 P.2d 779].) The lead opinion has not shown that the trial court lacks discretion to authorize a similar exchange here. (Cf. Pen. Code, § 1054, subds. (b)-(d) [reciprocal discovery must save court time and prevent unnecessary delay].)[6]

In any event, the lead opinion's elaborate efforts to shield these materials from the prosecution are, in the end, pointless. Nothing in the lead opinion or elsewhere in the law precludes the prosecutor, upon receiving notice of a defense *Pitchess* motion, from noticing his own motion for court-ordered access to the same materials. Such overlapping discovery requests can be consolidated for hearing in the trial court, allowing each side to appear and argue their respective interests in the material. Police personnel information is relevant to *both* sides in a criminal case where it might lead to evidence impeaching prosecution witnesses or undermining the People's theory of the case. To extent the defense obtains *Pitchess* material on this ground, the prosecution has an equal right to receive the same material after a consolidated hearing on mutual motions.

### D. THE PEOPLE'S INVOLVEMENT IN *PITCHESS* DISCOVERY DOES NOT THREATEN THE DEFENDANT'S CONSTITUTIONAL RIGHTS AND STATUTORY PRIVILEGES

The lead opinion seeks to promote the Sixth Amendment right to counsel by restricting prosecutorial participation in *Pitchess* hearings, and by denying access to "affidavits and/or any other information in support of the *Pitchess* motion." (Lead opn., *ante*, at p. 1045, fn. 5.) The lead opinion purports to rely on principles and authorities arising under the subpoena

---

[6]Responding to a trial court question about the logistics of *Pitchess* discovery in the present case, the city attorney suggested that it is not uncommon for the People to receive copies of information ordered disclosed to the defense: "Based on what the court has ordered, the [custodian of records] prepares a list of names, addresses and phone numbers to [any] complaints that the court has ordered revealed. *Those are made available to both the prosecution and the defense attorneys.* So that means that *both of those parties may come to [the custodian of records] and pick that up.*" (Italics added.)

duces tecum statutes. (Lead opn., *ante*, at pp. 1045-1046, citing Pen. Code, §§ 1326-1327, and *Barrett, supra,* 80 Cal.App.4th 1305, 1320-1321.) The implication seems to be that subpoena hearings are *routinely* conducted in the prosecutor's absence so as to protect defense strategy and work product. Without citation to authority, the lead opinion insinuates, though it does not hold, that the defense has a constitutional right to such secrecy. Whatever the nature of those rights, the majority overstates any threat to defense rights and privileges posed by either the *Pitchess* or subpoena process.

First, it seems unlikely that the defense will be forced to disclose its own confidences in seeking *Pitchess* discovery. Defendants commonly investigate police officers who search for physical evidence, or who conduct arrests and interrogations. Competent counsel can be expected to look for any pattern of aggression, untrustworthiness, or other misconduct documented in the officer's work files. This avenue of defense investigation is now so embedded in our criminal practice that its pursuit in appropriate cases is a foregone conclusion. Thus, defense theories of impeachment revealed during the *Pitchess* process can most likely be inferred from information already in the People's possession.[7]

Second, similar assumptions are at work under the analogous subpoena scheme—a scheme the lead opinion implicitly misconstrues. The general rule is that requests for subpoenaed records must be served on the prosecutor, who must be allowed to appear and argue whether the requisite showing has been made. (*City of Alhambra v. Superior Court* (1988) 205 Cal.App.3d 1118, 1130-1131 [205 Cal.App.3d 1556d, 252 Cal.Rptr. 789] (*Alhambra*); *Department of Corrections, supra,* 199 Cal.App.3d 1087, 1092-1093.) As a practical matter, the defendant is rarely required to disclose privileged information in order to obtain subpoenaed material. (*Department of Corrections, supra,* 199 Cal.App.3d at p. 1094; *Alhambra, supra,* 205 Cal.App.3d at p. 1130.)

Moreover, courts are not "bound by [a] defendant's naked claim of confidentiality" in the subpoena context. (*Alhambra, supra,* 205 Cal.App.3d

---

[7]It has been said that the "good cause" standard for obtaining in camera review of *Pitchess* material is "relatively relaxed." (*Santa Cruz, supra,* 49 Cal.3d 74, 84, citing Evid. Code, § 1043, subd. (b)(3).) This threshold requirement is traceable to *Pitchess v. Superior Court, supra,* 11 Cal.3d 531, 537, which said that the "requisite showing may be satisfied by general allegations which establish some cause for discovery." In fact, *Pitchess* adopted this standard in an abundance of caution to protect the moving party from unnecessary and impermissible disclosure of constitutionally protected or statutorily privileged material. (*Id.* at p. 536.) The lead opinion's contrary assumption about the effect of complying with the *Pitchess* scheme seems to ignore its history and purpose.

1118, 1130.) Nor are such claims used to "totally exclude" the district attorney from the discovery process. (*Department of Corrections, supra,* 199 Cal.App.3d 1087, 1094.) At most, trial courts review any information the defense presents ex parte, and withhold from the prosecution only those "specific" items necessary to protect the defendant's constitutional rights and statutory privileges. (*Ibid.*) The trial court then "proceed[s] to the merits of [the] defendant's discovery motion giving every reasonable notice and opportunity to participate to any opposing party." (*Alhambra, supra,* 205 Cal.App.3d at p. 1132, fn. omitted.) In other words, proceedings on defense subpoena requests remain open to the prosecutor. (*Department of Corrections, supra,* 199 Cal.App.3d at p. 1094.)

The lead opinion ignores this authority and instead cites *Barrett, supra,* 80 Cal.App.4th 1305. In *Barrett,* however, the Court of Appeal distinguished its own prior decision in *Department of Corrections, supra,* 199 Cal.App.3d 1087, and summarily upheld a trial court ruling allowing the defendant to prove his need for subpoenaed correctional records on both an in camera and ex parte basis. (*Barrett, supra,* 80 Cal.App.4th at pp. 1320-1321.) The lead opinion errs in suggesting that *Barrett*'s subpoena procedures were not extraordinary, and that courts generally exclude the People from these proceedings.

Applying these rules here, the trial court may withhold specific moving papers from the prosecutor, and excuse the prosecutor from selected portions of the *Pitchess* hearing, where such secrecy is necessary to protect the defendant's constitutional rights and statutory privileges. However, such extraordinary steps should occur only on a case-by-case basis where the defendant first makes a compelling showing that a particular right or privilege would otherwise be impaired. Hence, no constitutional or other purpose is served insofar as the lead opinion withholds materials supporting defense *Pitchess* motions in every case, and bars the prosecutor from participating in the hearing absent a trial court request to answer questions.[8]

---

[8]I note one final consequence of the lead opinion's analysis. The conclusion that the prosecution cannot see the entire defense *Pitchess* motion, freely respond to it, or share materials discovered thereby, rests primarily on the assumption that reciprocal notice, participation, and sharing are not expressly provided under the applicable statutes. If the statutes do not afford such rights to the prosecution when the defendant pursues *Pitchess* discovery, it appears the defendant would lack similar rights when a *Pitchess* motion is filed by the prosecution. Either way, the result is irrational.

In a related vein, the lead opinion goes too far in prohibiting shared *Pitchess* discovery by assuming a contrary rule might render the prosecutor a "*Brady* vessel" in future cases for any police personnel information he thereby receives. (See lead opn., *ante,* at p. 1046, fn. 6, citing *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215].) Whatever the

## E. Conclusion

Ignoring relevant authority, the lead opinion overturns 30 years of law and practice under the *Pitchess* scheme. This is the first and only decision depriving the People of full notice and adversarial participation in defense *Pitchess* motions, and denying access to *Pitchess* materials disclosed to the defendant. I disagree, and would affirm the judgment of the Court of Appeal.

Chin, J., and Brown, J., concurred.

**MORENO, J.,** Concurring and Dissenting.—A majority of the court concludes that the protective order required by Evidence Code section 1045, subdivision (e),[1] "that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law," limits the use of *Pitchess* discovery (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]) to the proceeding in which the discovery was sought (lead opn., *ante*, at pp. 1040-1043). The lead opinion concludes in part C that a prosecutor is entitled to notice of the date and place of a *Pitchess* hearing so that he or she can assist the trial court if it has any questions regarding discovery, but has no right to concurrently receive materials disclosed to the defense. (Lead opn., *ante*, at pp. 1043-1046.)

 ██ While I join in part C of the lead opinion, I respectfully disagree with the majority's conclusion in part B regarding the limits of a section 1045(e) protective order. Instead, I believe the Legislature intended that a section 1045(e) protective order permit the use of *Pitchess* discovery in *any* court proceeding pursuant to applicable law.

---

*Brady* implications of allowing the prosecutor to request and receive *Pitchess* material disclosed to the defense—an issue not before us here—the competing considerations are the prosecutor's alone to weigh, and are not a logical basis on which to impose a rule of law prohibiting shared discovery in every case. Also, the *Brady* implications of allowing the prosecutor to fully participate in defense *Pitchess* proceedings and to request shared discovery seem diluted by the availability of the *Pitchess* scheme itself. Under *Brady, supra*, 373 U.S. 83, and its progeny, courts seek to provide a means of discovering "material exculpatory evidence" known by the prosecution or "others acting on [its] behalf" that *would not otherwise be available to the defense* in a particular case. (*In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715]; see *id.* at pp. 877, 880.) California solved this problem long ago with respect to the contents of police personnel files by establishing the *Pitchess* procedure and allowing court-ordered discovery where the information is relevant to the action.

[1] Hereafter section 1045(e). All statutory references are to the Evidence Code unless otherwise noted.

*Discussion*

A. *Section 1045*

In 1978, and again in 1982, the Legislature considered amendments to section 1045 that would have restricted use of the information disclosed in a *Pitchess* motion to the particular case in which the disclosure was made. The Legislature rejected this restriction on both occasions. (See lead opn., *ante*, at pp. 1040-1041.) Instead, the only limitation the Legislature placed on the use of such records is that they "may not be used for any purpose other than a court proceeding pursuant to applicable law." (§ 1045(e).) A majority of the court concludes, nonetheless, that the use of *Pitchess* records *is* limited to the particular case in which those records were obtained. It attempts to explain away the Legislature's express rejection of such a limitation in the following manner: because the Legislature "gave up" in its attempt to enumerate specific types of cases subject to *Pitchess* discovery, the language " 'a court proceeding pursuant to applicable law' " "did not necessarily mean that disclosure was *not* limited to the case in which it was being sought; rather, we surmise it meant the Legislature was not defining substantively what kind of case that might be." (Lead opn., *ante*, at p. 1042.)

I find this reasoning unpersuasive. First, it departs too far from established canons of statutory construction. In *People v. Robles* (2000) 23 Cal.4th 1106, 1111 [99 Cal.Rptr.2d 120, 5 P.3d 176] (*Robles*), we stated: " 'Because statutory language "generally provide[s] the most reliable indicator" of [legislative] intent [citations], we turn to the words themselves, giving them their "usual and ordinary meanings" and construing them in context [citation].' [Citation.] If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs. [Citation.] If, however, the statutory language is susceptible of more than one reasonable construction, we can look to the legislative history in aid of ascertaining legislative intent. [Citation.]"

A plain reading of section 1045(e) does not lend itself to the majority's view. Simply stated, there is no language in the phrase "the court shall . . . order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law" that suggests that the use of *Pitchess* information is limited to a *particular* court proceeding. While the Legislature could have utilized phrases such as "this court proceeding" or "the pending court proceeding" that *would* have so limited the use of such records, it did not. Instead, the Legislature's use of the indefinite article in the phrase "a court proceeding" indicates that the use of *Pitchess* discovery was not to be limited to the court proceeding in which

discovery was sought, but to court proceedings in general. Thus, under section 1045(e), information received through *Pitchess* may not, for example, be posted on the Internet; but it may be used in *any* court proceeding pursuant to applicable law.

Second, even if we assume, for the sake of argument, that the plain language of section 1045(e) is susceptible to two interpretations and is thus ambiguous, we look to the statute's legislative history to ascertain the Legislature's true intent. (*Robles, supra,* 23 Cal.4th at p. 1111.)

The statutory *Pitchess* discovery scheme, of which section 1045(e) is a part, was enacted by the Legislature in 1978. As the lead opinion recognizes (lead opn., *ante,* at p. 1040), the original bill was amended on August 7, 1978, to state that the use of records obtained pursuant to *Pitchess* discovery "shall be limited to the litigation in aid of which access to the records or information was sought." (Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, italics omitted.) But a subsequent Assembly amendment deleted this language and replaced it with the current version of section 1045, subdivision (d), which contains no such blanket limitation and instead provides that "the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression." (Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 30, 1978, italics omitted.)

Subdivision (e) of section 1045 was added in 1982. The original version of the bill adding this provision expressly provided that peace officer personnel records obtained through *Pitchess* discovery "may not be used for any purpose or in any proceedings other than those identified in the motion pursuant to Section 1043." (Sen. Bill No. 1065 (1981-1982 Reg. Sess.) Mar. 30, 1981, italics omitted.) This language was removed, however, by a subsequent amendment and replaced with the current version of section 1045(e) which, as we have seen, provides only that such records "may not be used for any purpose other than a court proceeding pursuant to applicable law."

The Legislature, in enacting the *Pitchess* discovery scheme, and again in enacting section 1045(e), considered and rejected limiting the use of *Pitchess* discovery to the proceedings in which the discovery was obtained. In *Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 531-532 [117 Cal.Rptr.2d 220, 41 P.3d 46], we observed that, during the enactment process of Civil Code section 3291, the Assembly amended the bill to include prejudgment interest accrued pursuant to Civil Code section 3291 in the judgment; thereafter, the

Assembly deleted such language from the final version. We stated, " 'the Legislature's rejection of a specific provision which appeared in the original version of an act supports the conclusion that the act should not be construed to include the omitted provision.' " (*Hess, supra,* 27 Cal.4th at p. 532.)

We applied this general rule, in the context of *Pitchess,* in *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74 [260 Cal.Rptr. 520, 776 P.2d 222] (*City of Santa Cruz*), where we considered whether the Legislature, when it passed section 1043, subdivision (b), intended to require that affidavits in support of a request for *Pitchess* discovery be based upon personal knowledge. We noted that the initial drafts of section 1043 differed from its final version, in that the Legislature deleted the personal knowledge requirement. We stated: "[I]f [the Legislature's] intent was truly to abrogate the use of affidavits on information and belief and to require affidavits based on personal knowledge, it is reasonable to assume that it would have done so explicitly. [Citation.] It obviously knew how. [Citation.] We decline to redraft the statute to impose such a burdensome requirement where the Legislature has conspicuously failed to do so. [¶] We need not speculate, however, as to the Legislature's intentions in this regard. The legislative history of section 1043 reveals that the Legislature expressly considered and *rejected* a requirement of personal knowledge." (*City of Santa Cruz, supra,* 49 Cal.3d at p. 88.)

The reasoning utilized in *City of Santa Cruz* applies equally here. The Legislature obviously knew how to limit the use of *Pitchess* materials to a particular case. It conspicuously failed to do so. Our court should not, therefore, redraft section 1045(e) to impose such a burdensome requirement when the Legislature expressly considered and *rejected* the same. Instead, the better view, based on *Hess* and *City of Santa Cruz,* is that the Legislature not only "gave up" on enumerating specific crimes subject to *Pitchess* disclosure, it also "gave up" on trying to limit the use of *Pitchess* material to a particular proceeding.

The lead opinion counters by claiming (1) that section 1045(e) is "part of an overall statutory scheme that carefully balances peace officers' privacy interests in their personnel records against defendants' rights of access to information relevant to their defense, . . . [and] allowing a defendant to share such information with other defendants would defeat the purpose of the balancing process," and (2) that the phrase "applicable law" in section 1045(e) "referred to section 1043 and thus signified the Legislature's intent

to restrict use of the disclosed information to the proceeding in which it was sought." (Lead opn., *ante*, at p. 1042.)[2]

I disagree, as there are sound reasons for the Legislature's decision to permit the use of *Pitchess* discovery in any subsequent proceeding. First, the careful screening process that precedes the disclosure of *Pitchess* records adequately protects any privacy interest an officer has in any record disclosed, even if such record may be admitted in a subsequent judicial proceeding. As we recently held in *People v. Mooc* (2001) 26 Cal.4th 1216, 1229 [114 Cal.Rptr.2d 482, 36 P.3d 21], the obligation of the city attorney, as a custodian of *Pitchess* records, is to bring to the in-chambers *Pitchess* hearing only those documents that he or she deems "potentially relevant." The trial judge then screens those documents again, and discloses only those that are "material[] to the subject matter involved in the pending litigation." (§ 1043(b)(3).) Any *Pitchess* information eventually received by a defense attorney, therefore, has met the section 1043(b)(3) "good cause" and relevancy requirements, and has been found to fall outside of *Pitchess* protection. In other words, any information received by a defense attorney (typically an incident of police misconduct) has been "distilled" through *Pitchess*; there is no need to repeat that process, with different judges, again and again.

Second, a previously disclosed *Pitchess* document cannot be admitted into evidence in any subsequent "court proceeding pursuant to applicable law," unless it meets the relevancy requirements of section 210, which is the functional equivalent of section 1043(b)(3)—such document must be material to the subject matter involved in the pending litigation. Of course, such document is also subject to exclusion under section 352 if its probative value is substantially outweighed by its prejudicial effect.[3] Accordingly, the majority oversteps in its assumption that the phrase "applicable law" limits the use of *Pitchess* records to the particular case in which those records were obtained.

Sadly, the majority's interpretation forces defense attorneys, city attorneys and trial judges to "reinvent the wheel" with each "new" *Pitchess* request

---

[2]Section 1043, subdivision (b)(3) (hereafter section 1043(b)(3)) requires, in order to discover *Pitchess* information: "Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records."

[3]Section 352 provides, in relevant part: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

regarding the same peace officer—defense attorneys must write motions, city attorneys must scour records, and judges must conduct in-chambers hearings, simply to make the same *Pitchess* determination over and over again. Certainly, trial judges are capable of ruling on evidentiary motions, prior to trial, to determine whether a previously disclosed *Pitchess* record is admissible in a particular case without resort to yet another *Pitchess* motion. Repetitive *Pitchess* motions are an unnecessary and enormous waste of scant judicial and governmental resources. It is therefore reasonable to infer that the Legislature intended to avoid this result when it expressly rejected, *twice*, limiting the use of *Pitchess* disclosure to the pending proceeding.

The majority's decision also puts defense attorneys from the same firm in the awkward position of withholding information from one another. (Lead opn., *ante*, at p. 1043.) And where one lawyer has two cases in which the same officer is a witness, it follows from the majority's holding that she must not disclose *Pitchess* information to herself. I do not believe the Legislature intended this absurd result.

This aspect of the majority's holding also forces defense attorneys to needlessly conduct repetitive investigations upon receiving *Pitchess* records. Thus, victims of substantiated police misconduct, previously disclosed by a court under *Pitchess*, must intrusively be located and interrogated, again and again, only to provide the same information to different defense investigators. In *In re Hamilton* (1999) 20 Cal.4th 273, 307-309 [84 Cal.Rptr.2d 403, 975 P.2d 600], Justice Chin, in his concurring opinion, expressed concern over the practice of interviewing jurors years after a verdict in a death penalty case in the hopes of generating a misconduct claim. He opined that "perhaps the time has come for the Legislature to enact a comprehensive 'Juror Bill of Rights' designed to protect jurors from intrusive tactics while at the same time permitting reasonable means to expose the occasional genuine case of jury misconduct." (*Id.* at p. 308 (conc. opn. of Chin, J.).) It seems that the victims of police misconduct should be entitled to the same courtesy.

### B. *Unanswered Question*

Most glaringly, the lead opinion leaves unanswered the threshold question of which particular *Pitchess* "records disclosed or discovered" are subject to a section 1045(e) protective order. Specifically, the information provided to the defense by the trial court after a *Pitchess* hearing, in daily trial practice, is limited to a complainant's or witness's name, address, telephone number, and the date of the incident. As we stated in *City of Santa Cruz, supra,* 49 Cal.3d at page 84: "[C]ourts have generally refused to disclose verbatim

reports or records of any kind from peace officer personnel files, ordering instead (as the municipal court directed here) that the agency reveal only the name, address and phone number of any prior complainants and witnesses and the dates of the incidents in question."

Thus, a trial court's *Pitchess* disclosure necessarily presupposes an independent investigation by defense counsel. Accordingly, the threshold question we should endeavor to answer is whether a section 1045(e) protective order (a) may only restrict the use of the actual information disclosed by the trial court—i.e., the complainant's and witness's name, address, telephone number and the date of the incident; or (b) may also encompass the direct fruits of the information developed during this independent investigation— e.g., a complainant's or disclosed witness's statement; or (c) may encompass other information obtained during this independent investigation—e.g., physical evidence (such as a photograph of injuries), or a statement obtained from a newly discovered witness. Until the threshold question of what constitutes *Pitchess* information is answered, the majority's decision leaves trial courts, city attorneys, and defense attorneys, with little guidance.

## CONCLUSION

The lead opinion, quoting *City of Santa Cruz, supra*, 49 Cal.3d at page 84, repeats this court's 1989 observation that, " '[a]s statutory schemes go [*Pitchess*] is a veritable model of clarity and balance.' " (Lead opn., *ante*, at p. 1038.) But as I said in my dissenting opinion in *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 19 [124 Cal.Rptr.2d 202, 52 P.3d 129], "While this may have been true in 1989, in daily trial practice, the *Pitchess* pendulum has swung too far in favor of police privacy rights and against the disclosure of relevant evidence." In the present case, the pendulum continues to swing in the wrong direction.

The petition of real parties in interest for a rehearing was denied April 16, 2003. Baxter, J., Chin, J., and Brown, J., were of the opinion that the petition should be granted.