Filed 7/8/14 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JULIO DAVIS,<br><br>    Defendant and Appellant. | A137800<br><br>(San Francisco County<br>Super. Ct. No. 174657)<br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING** |

BY THE COURT:

It is ordered that the opinion filed herein on June 12, 2014, be modified in the following particulars:

In the first full paragraph on page 2, after the sentence beginning "We denied Davis's motion to consolidate," the following sentence is added: "Accordingly, this court takes judicial notice of the record in the related writ proceeding (A139767). (Evid. Code §§ 452 & 459.)"

This modification does not effect a change in the judgment.

Appellant's petition for rehearing is denied.

Dated:_____          _____

                                                    Kline, P.J.

1

Trial Court:  Superior Court of San Francisco County

Trial Judge:  Hon. Angela Bradstreet

Attorney for Defendant and Appellant
Julio Davis

Susan D. Shors
By appointment of the Court of Appeal
 under the First District Appellate Project
 Independent Case System

Attorney for Plaintiff and Respondent
The People

Kamala D. Harris
Attorney General
Dane R. Gillette
Chief Assistant Attorney General
Gerald A. Engler
Senior Assistant Attorney General
Seth K. Schalit
Supervising Deputy Attorney General
Laurence K. Sullivan
Supervising Deputy Attorney General

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JULIO DAVIS,<br><br>     Defendant and Appellant. | A137800<br><br>(San Francisco County<br>Super. Ct. No. 174657) |

**I. INTRODUCTION**

In 2000, a jury convicted Julio Davis of first degree burglary (Pen. Code, § 459) and also found that he had four prior first degree felony burglary convictions. The trial court imposed a sentence of 25 years to life in prison. In April 2003, this court affirmed the judgment against Davis who is currently serving his sentence. (See *People v. Davis* (Apr. 2, 2003, A094645) [nonpub. opn.] (*Davis I*).)[1]

In 2012, the San Francisco District Attorney's office filed a motion for discovery of potentially relevant records from the personnel file of a police officer who testified at trial in *Davis I*. The superior court conducted an in-camera review of the file and then issued an order finding that the officer's records are not material to Davis's case, either as evidence bearing on his guilt or sentence or as impeachment evidence.

Although not a party to the 2012 post-judgment discovery motion, Davis filed a notice of appeal seeking independent appellate review of the officer's records to determine whether they contain material that should have been produced to the People pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*). In a related petition for writ

_____

[1] We granted Davis's motion to augment the record in this appeal to include the record in *Davis I*.

of mandate (A139767), Davis seeks an order compelling the trial court to conduct a new hearing on the People's *Brady* motion at which Davis will have the opportunity to be heard.

We denied Davis's motion to consolidate his petition for writ of mandate with his appeal and ordered instead that the petition would be considered with the appeal. For reasons that follow, we find that Davis has failed to establish that he has a right to appeal the post-judgment *Brady* order or that he is entitled to a writ of mandate. Therefore, we will dismiss this appeal and deny the petition by separate order.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Davis I*

In the early morning hours of March 28, 1999, residents of a ground level unit of a 20-unit "mixed-use" building on Howard Street in San Francisco were awakened by sounds of glass breaking and a person coming through a window. Through translucent glass in their bedroom door, they saw a single person walk past that door several times. They called 911 and police arrived at about the same time that the residents heard the intruder climb a staircase and go into the office space above them.

When police entered the unit, they found Davis exiting a laundry closet at the top of the staircase. They handcuffed him and removed a screwdriver from his pocket. In the laundry closet, the police found two items that did not belong to either of the residents, a "wad" of foreign currency and a pair of cufflinks. They also found items that had been removed from the kitchen counter in the unit, including a wallet, an empty money clip, which had earlier contained $520, a pager, a cell phone charger, and a set of car keys. Two CD players and a backpack containing a laptop computer had been moved to the hallway near the broken window and Davis's fingerprints were on the stereo equipment.

At his December 2000 jury trial, Davis's defense was that he was guilty of trespass but not burglary. According to this defense theory, an unknown person broke into the victims' unit before Davis arrived and that person stole the $520 that was missing from the money clip. Then, when Davis arrived at the scene he found an open window

2

frame, assumed the building was vacant and climbed inside because he was homeless and needed a warm place to sleep. The jury rejected this unsupported theory, convicted Davis of first degree burglary and also found that he had suffered four prior first degree burglary convictions. The trial court denied a defense motion to strike those convictions, and sentenced Davis to 25 years to life imprisonment.

Davis appealed, alleging prosecutor misconduct, instructional error, denial of his right to a jury trial on the priors, and that his sentence constituted cruel and unusual punishment. On April 2, 2003, this court filed our opinion in *Davis I*, in which we rejected Davis's claims of error and affirmed the judgment against him.

**B.**    ***Officer Walker's Testimony in Davis I***

On December 18, 2000, San Francisco Police Officer Robert Walker testified at the trial in *Davis I*. However his testimony was not relevant to any issue on appeal and, indeed, he was not even mentioned in our decision in that case.

Walker testified that he was one of the officers who responded to the location of the March 1999 burglary. When he arrived, he took a post on the corner of Howard and 7th Street to help establish a perimeter around the crime scene. Walker wore his regular uniform clothes, including a short sleeved shirt and vest, and recalled that the weather was typical for the time of year and not too cold. Walker did not enter the unit where the crime occurred until after Davis was arrested and placed in a patrol car. Walker booked three items of evidence that had been collected at the crime scene: the screwdriver, the cufflinks, and the foreign cash. Walker did not collect these items himself; he received them from another officer and then booked and sealed them in an evidence envelope.

Defense counsel cross-examined Walker regarding the circumstances under which he received the evidence that he booked. Walker could not recall when during the investigation another officer gave him the evidence to book or whether he received that evidence while still at the scene or later after he returned to the police station. Defense counsel also asked several questions about a strip-search that was conducted at the police station. Walker recalled that the search was authorized and did occur, but he could not recall whether he conducted the search or if another officer did.

Defense counsel also probed Walker about his recollection as to whether Davis was homeless and what the weather was like when the crime occurred. Walker testified that he did not know if Davis was homeless; that he had not inquired about that subject at the time of the burglary; that he did not prepare the police report associated with the crime; and that he did not recall whether the report reflected that Davis was homeless. Walker could not recall what the temperature was outside when he arrived at the crime scene and he did not specifically recall whether he put on items of clothing before he got out of his patrol car that morning.

## C.       *The 2012 Discovery Motion*

On September 4, 2012, the San Francisco District Attorney filed a motion for discovery of Officer Walker's personnel records pursuant to *Brady, supra*, 373 U.S. 83 and Evidence Code sections 1043 and 1045, subdivision (e). The trial court was specifically requested "to conduct an in camera review of said officer's personnel file or relevant portions thereof, to disclose to the District Attorney's Office and the defense any *Brady* material located in the personnel file, and to issue a protective order to protect the officer's statutory right of privacy in the personnel file." The People served their motion and accompanying papers on both the San Francisco Police Department and on Erwin Fredrich, the defense attorney in *Davis I*.

The People's motion was accompanied by two declarations by an assistant district attorney. According to one of them, the People were notified about potential *Brady* material in Walker's file in August 2010. In this regard, the declaration states: "Pursuant to Bureau Order No. 2010-01, dated August 13, 2010, the San Francisco Police Department has informed the District Attorney's office that [Walker] has material in his or her personnel file that may be subject to disclosure under *Brady* v. *Maryland* (1963) 373 U.S. 83. . . ." On information and belief, the assistant district attorney stated that the police department would not disclose Walker's records without a court order.

With their declarations, the People advised the court that Davis had been convicted of violating Penal Code section 459,[2] that Officer Walker was a prosecution witness at Davis's trial who testified on "the issue of the defendant's possession of burglary tools," and that Walker's credibility as a witness "may have been placed at issue." One declaration also states that Walker "testified that he received the burglary tools that were attributed to the defendant from another officer, and that he booked those tools into evidence."

On September 27, 2012, the superior court held a hearing on the People's discovery motion. Apparently, that hearing was not transcribed. However, a minute order reflects that Mr. Fredrich, defense counsel in *Davis I*, appeared and was appointed private counsel for Davis in this matter, and that Davis's appearance was waived. A custodian of records for the police department appeared at the hearing and produced a file of documents that was lodged with the court.

On October 1, 2012, the Honorable Angela Bradstreet issued an order which states: "The Court having conducted an in camera review of documents produced by the Custodian of Records of the San Francisco Police Department on 10/1, 2012 pursuant to the People's motion for discovery under *Brady* and Evidence Code Section 1043 et seq., and good cause appearing, HEREBY ORDERS that **none of the documents reviewed be produced to the District Attorney for possible disclosure.** The Court finds that none of the documents produced fall within the standard articulated in *Brady v. Maryland* 373 U.S. 83. None of the documents are material to the innocence or guilt of the defendant, none are material to punishment, none constitute conduct which is moral turpitude and none constitute relevant impeachment evidence." (Bolding in original.)

On October 1, 2012, the superior court also filed a "Sealing Order," which directed that an attached document, a 77-page San Francisco Police Department Internal

---

[2] All further undesignated statutory references are to the Penal Code unless otherwise noted.

5

Affairs report, was to "be sealed and not opened absent further order of the court." (Capitalization omitted.)

### D.     *The Appeal and Writ Petition*

On October 18, 2012, Davis filed an in pro per notice of appeal from the October 1, 2012, order and also requested the appointment of counsel for that appeal. Appellate counsel was appointed on March 18, 2013. With the assistance of counsel, Davis argues that (1) he is entitled to appellate review of the superior court's finding that Walker's file does not contain *Brady* material; and (2) he was denied due process at the *Brady* hearing in the superior court. In their Respondent's Brief, the People raise the question whether the October 1 order is appealable.

On September 17, 2013, Davis filed a petition for writ of mandate in this court in which he reasserts his claim that he was denied due process at the *Brady* hearing. Pursuant to that petition, Davis seeks an order compelling the superior court to conduct a new hearing on the People's discovery motion, to appoint counsel to represent Davis at the hearing, and to afford him an opportunity to participate in that hearing.

### III.  DISCUSSION

### A.     *Legal Principles*

The issues before us implicate two sometimes related but clearly distinct legal principles: (1) the People's obligation to disclose material evidence that is favorable to the defense under *Brady, supra*, 373 U.S. 83, and (2) a criminal defendant's right to discover confidential records in a peace officer's personnel files under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

"Under *Brady, supra*, 373 U.S. 83, 87, the prosecution must disclose to the defense any evidence that is 'favorable to the accused' and is 'material' on the issue of either guilt or punishment. Failure to do so violates the accused's constitutional right to due process. [Citation.] Evidence is material under the *Brady* standard 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' [Citation.]" (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7 (*City of Los Angeles*).) "The prosecution's disclosure duty

under *Brady* applies even without a request by the accused; it pertains not only to exculpatory evidence but also to impeachment evidence. [Citations.]" (*Id.* at p. 8; see also *People v. Cook* (2006) 39 Cal.4th 566, 587 ["Evidence that is material to defendant's guilt, innocence or punishment and that impeaches a prosecution witness must be disclosed."].)

"Although *Brady* disclosure issues may arise 'in advance of,' 'during,' or 'after trial' [citation], the test is always the same. [Citation.] *Brady* materiality is a 'constitutional standard' required to ensure that nondisclosure will not 'result in the denial of defendant's [due process] right to a fair trial.' [Citation.] [¶] "Because the *Brady* rule encompasses evidence 'known only to police investigators and not to the prosecutor,' it is incumbent upon the prosecutor to learn of any favorable evidence 'known to the others acting on the government's behalf in [a] case, including the police.' [Citations.]" (*City of Los Angeles, supra,* 29 Cal.4th at p. 8.)

Independent of *Brady* and its requirements, the California Supreme court has recognized that in criminal cases involving police officer testimony, evidence in the officer's personnel files may be relevant to and discoverable by the defense. (*Pitchess, supra,* 11 Cal.3d 531.) To provide for the discovery of such material while also protecting the privacy rights of the affected officer, the California Legislature codified the privileges and procedures that govern what is now commonly referred to as "*Pitchess* motions" through the enactment of sections 832.7 and 832.8 and Evidence Code sections 1043 through 1045. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.)

" 'The Penal Code provisions define "personnel records" ( . . . § 832.8) and provide that such records are "confidential" and subject to discovery only pursuant to the procedures set forth in the Evidence Code. ( . . . § 832.7.) Evidence Code sections 1043 and 1045 set out the procedures for discovery in detail. . . . [S]ection 1043, subdivision (a) requires a written motion and notice to the governmental agency which has custody of the records sought, and subdivision (b) provides that such motion shall include, inter alia, "(2) A description of the type of records or information sought; and [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality

7

thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that such governmental agency identified has such records or information from such records." ' [Citation.]" (*City of Los Angeles, supra,* 29 Cal.4th at pp. 8-9.)

**B.**     *The Appeal*

Davis attempts to raise two claims via his appeal: (1) that he is entitled to independent appellate review of Officer Walker's file to determine whether the trial court erred by concluding that it does not contain any material discoverable under *Brady*, and (2) that the trial court violated his due process rights by denying him the opportunity to be heard at the discovery hearing. The People contend that this appeal must be dismissed because Davis has failed to identify an appealable order.

Preliminarily, the People object that the notice of appeal lacks sufficient specificity because it does not identify either a judgment or order but refers only to a filing date of October 1, 2012. We disagree with this contention. Rule 8.304(a)(4) of the California Rules of Court establishes that a "notice of appeal must be liberally construed" and that "the notice is sufficient if it identifies the particular judgment or order being appealed." Applying this rule here, we conclude that Davis's pro per notice of appeal sufficiently identifies either or both of the orders filed by the superior court on October 1, 2012. Davis's appellate briefs, which were prepared after counsel was appointed for him, clarify that Davis is challenging the superior court's finding that Officer Walker's file does not contain any discoverable material. Thus, when we refer to the October 1 order in this opinion, we are referencing the order containing that finding.

However, the more difficult question is whether the October 1 order is appealable. " 'It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute.' [Citations.]" (*People v. Mazurette* (2001) 24 Cal.4th 789, 792.) Here, Davis contends that the October 1 order is appealable under Penal Code section 1237, subdivision (b) (section 1237(b)), which states that the defendant may take an appeal "From any order made after judgment, affecting the substantial rights of the party." Unquestionably, the October 1 order is an order made

after judgment in *Davis I*.  The issue, however, is whether it affects Davis's substantial rights.

In addressing this issue, Davis characterizes the October 1 order as a "denial of *Brady* disclosure."  This characterization of the October 1 order is potentially very misleading.  The superior court did not *deny* a request to conduct a review of a confidential file for *Brady* material.  Nor did it *deny* a request to order production of evidence that satisfies the *Brady* materiality standard.  Rather, the superior court *granted* the People's request to conduct an in camera review of an officer's confidential file and concluded, based on that review, that information in the file was not material under *Brady*.

Thus, the question raised by this appeal is whether a post-judgment order that a police officer's confidential file does not contain *Brady* material affects Davis's substantial rights.  Two facts that Davis fails to squarely acknowledge indicate to us that the October 1 order does not affect Davis's substantial rights.

First, the October 1 order resolves a motion that Davis did not and could not have made himself.  Prior to judgment, Davis could have filed a *Pitchess* motion had he believed that Officer Walker's credibility was relevant to his defense.  Apparently, that was not the case since no such motion was filed.  In any event, there are jurisdictional limits on a court's authority to entertain a convicted defendant's post-judgment motion.

As a general rule, there " 'is no statutory authority for a trial court to entertain a postjudgment motion that is unrelated to any proceeding then pending before the court.  [Citation.]  Indeed, a motion is not an independent remedy.  It is ancillary to an on-going action and " 'implies the pendency of a suit between the parties and is confined to incidental matters in the progress of the cause.  As the rule is sometimes expressed, a motion relates to some question collateral to the main object of the action and is connected with, and dependent on, the principal remedy.' "  [Citation.]  In most cases, after the judgment has become final, there is nothing pending to which a motion may attach.' [Citation.]"  (*People v. Picklesimer* (2010) 48 Cal.4th 330, 337 (*Picklesimer*).)

9

Consistent with this general rule, our supreme court has held that a trial court does not have authority "to order 'free-floating' postjudgment discovery" which is unrelated to any proceeding pending before the court. (*People v. Gonzales* (1990) 51 Cal.3d 1179, 1256, 1261; see also *In re Steele* (2004) 32 Cal.4th 682, 691.)

Section 1054.9 modifies the rule precluding a convicted defendant from seeking post-judgment discovery, but only in cases in which the defendant has been sentenced to death or life in prison without the possibility of parole. (*In re Steele, supra*, 32 Cal.4th at p. 691.) "[F]or defendants sentenced to death or life in prison without the possibility of parole, section 1054.9 authorizes a first-time, pre-habeas corpus motion for discovery of peace officer personnel records. According to the literal language of section 1054.9, the scope of such discovery is the materials 'to which the same defendant would have been entitled at time of trial.' (§ 1054.9, subd. (b).)" (*Hurd v. Superior Court* (2006) 144 Cal.App.4th 1100, 1110.) Here, Davis does not and indeed cannot rely on section 1054.9.[3]

In this case, the post-judgment discovery proceeding was initiated by the People not the defendant. That proceeding took the form of a *Pitchess* motion, but it was authorized by *Brady* itself because, as noted earlier in our discussion, the People's obligations under *Brady* are ongoing, even post-judgment. (*City of Los Angeles, supra*, 29 Cal.4th at p. 8.) However, as we also discuss above, the People's *Brady* obligations are distinct from the defendant's right to obtain discovery from an officer's confidential files. A convicted defendant does not have a right to a post-judgment discovery order "based on *Brady* alone, independent of section 1054.9." (*Kennedy v. Superior Court* (2006) 145 Cal.App.4th 359, 369.)

---

[3] However, Davis does mistakenly rely on out-of-context passages from *Curl v. Superior Court* (2006) 140 Cal.App.4th 310, 323-324, a writ proceeding which involved a post-conviction motion for discovery under section 1054.9 and thus has no relevance to the issue presented here. Furthermore, Davis fails to acknowledge that *Curl* was disapproved in *Barnett v. Superior Court* (2010) 50 Cal.4th 890, 901.

10

A second important factor affecting our conclusion is that Davis did not use the People's *Brady* motion as a basis for pursuing his own request for post-judgment discovery. Arguably, once the People filed a post-judgment *Brady* motion, there was a pending proceeding to which Davis could have attached his own discovery request. However that question is not presented by this appeal. Even in cases in which a defendant can obtain post-judgment discovery, for example pursuant to section 1054.9, he must comply with the *Pitchess* procedure and requirements which include showing that the discovery sought is material to pending litigation. In the present case, the appellate record does not contain any evidence that Davis attempted to file his own *Pitchess* motion or otherwise intervene in the post-judgment proceeding that the People initiated by filing their *Brady* motion.

The circumstances outlined above support the conclusion that the October 1 order did not affect Davis's substantial rights. Prior to trial, Davis had the right to seek discovery from Officer Walker's files if he believed Walker's credibility was relevant to his defense. However, during the post-judgment stage of his criminal case, Davis does not have a free-floating right to discovery. As explained above, *Brady* imposes disclosure obligations on the prosecution but it does not confer discovery rights on a convicted defendant. Thus, Davis himself had no right to seek post-judgment discovery from Officer Walker's files. Nor did he make any effort to join in the proceeding initiated by the People. Under these circumstances, the order entered after an in camera review of the confidential file that was conducted solely on behalf of the People did not affect Davis's substantial rights.

Claiming that the October 1 order does affect his substantial rights, Davis mistakenly relies on *People v. Totari* (2002) 28 Cal.4th 876 (*Totari*). In 1985, the *Totari* defendant entered guilty pleas in two cases charging him with drug possession and check fraud. Two years later, he was granted limited expungement of his record. Then, in 1998, the defendant filed a motion to vacate his 1985 convictions pursuant to section 1016.5 on the ground that he was not advised of the immigration consequences of his

11

guilty pleas.[4]  The trial court denied the motion to vacate, and the defendant's appeal was dismissed on the ground that the trial court's order was nonappealable.  The Supreme Court reversed that decision.

The *Totari* court recognized that, although section 1016.5 creates the remedy of a motion to vacate, that statute does not expressly authorize an appeal from the denial of such a motion.  (*Totari, supra*, 28 Cal.4th at p. 882.)  However, the court found that the denial of this statutory motion was appealable pursuant to section 1237(b) as an order made after judgment affecting the substantial rights of the defendant.  The court reasoned that the Legislature enacted section 1016.5 for the express purpose of protecting "alien defendants who pleaded guilty without knowing that their guilty plea could lead to immigration consequences."  (*Id*. at p. 883.)  The court also relied on its own prior authority establishing that a noncitizen defendant has a " 'substantial right' " to be given complete advisements under section 1016.5.  (*Id*. at p. 883, quoting *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199-200.)

The *Totari* court rejected the People's contention that, assuming the denial of a section 1016.5 motion can affect a defendant's substantial rights, the record showed that this particular defendant's substantial rights were not violated.  (*Totari, supra,* 28 Cal.4th at p. 884.)  That factual claim went to the merits of the dispute as opposed to the question whether the order itself was appealable.  (*Id*. at pp. 884-887.)  Ultimately, the *Totari* court held: "Once the Legislature has determined that a noncitizen defendant has a substantial right to be given complete advisements and affords defendant a means to obtain relief by way of a *statutory* postjudgment motion to vacate, the 'no second appeal' rule loses its

---

[4]  Section 1016.5 imposes an obligation on trial courts to advise criminal defendants of the immigration consequences of pleading guilty or nolo contendere and also provides that if the court fails to give the required advisement, "the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty.  Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."  (§ 1016.5, subd. (b).)

urgency and a denial order qualifies as an 'order made after judgment, affecting the substantial rights of the party.' " (*Id.* at p. 886-887.)

*Totari* is factually inapposite. That case involved a post-judgment motion (1) filed by the defendant, (2) that was expressly authorized by statute, and (3) that had nothing to do with post-judgment discovery. Furthermore, none of the factors which supported the *Totari* court's legal conclusion are found here. The Legislature has not found that a convicted defendant has a substantial right to seek post-judgment discovery, except when section 1054.9 applies. Nor has Davis identified any authority entitling him to participate in a post-judgment *Brady* proceeding. As explained above, *Brady* imposes disclosure obligations on a prosecutor, but it does not authorize a convicted defendant to seek post-judgment discovery.

In his Reply Brief, Davis argues that this appeal "is the established appellate procedure for . . . reviewing [*Brady*] material," citing *People v. Myles* (2012) 53 Cal.4th 1181, 1209. However, *Myles* is inapposite as that case was a direct appeal from a judgment of death and the issue the court addressed was whether the trial court erred by denying a pre-conviction defense motion for disclosure of confidential records of law enforcement officers involved in the investigation of the case. (*Id.* at pp. 1208-1209.)

Davis insists that he is seeking redress for a right that was denied to him at trial in *Davis I*. He reasons that "if appellant was denied his federal constitutional right to relevant and material impeachment evidence at trial, then he was *not* convicted after a fair trial" and his conviction is open to challenge. This theory highlights two flaws that run throughout Davis's arguments in this case.

First, the defense right to discover evidence from the confidential file of a police officer involved in his case derives solely from *Pitchess*. *Brady* imposes disclosure obligations on the prosecution, and, as far as we are aware, a criminal defendant does not have the constitutional right to participate in the procedure that the prosecution uses to ensure compliance with its obligations under *Brady*. Second, Davis is attempting to use the appellate process to seek a remedy for a potential harm that is not the subject of this proceeding. If Davis believes that the People violated *Brady* in *Davis I*, that is an

13

independent claim that was not alleged, supported, or in any way addressed in the superior court proceeding that resulted in the October 1 order.

We reiterate that the superior court did not refuse to conduct a *Brady* inquiry. Nor did it refuse to order the production of documents that were discoverable under *Brady*. If those facts were present, our analysis could be very different. As it is though, Davis has failed to establish that the October 1 order affected his substantial rights. Nor has he identified any other rule or statute authorizing this appeal. Therefore, Davis's appeal is dismissed.

## C.  *The Writ Petition*

After the People filed their opposition brief questioning Davis's right to appeal from the October 1 order, Davis filed a petition for writ of mandate seeking to remedy an alleged violation of his constitutional right to due process.

### 1.  *Background*

In his petition, Davis alleges that he is challenging "the superior court's denial of due process" to him during the *Brady* proceedings. His theory is that the prosecutor failed to provide the court with sufficient information about Officer Walker to make a fair ruling and that the superior court "abused its discretion" by conducting a review of Walker's personnel files for *Brady* material "when petitioner did not have an opportunity to be heard on the issue and the court made its decision based solely on the prosecution's presentation of the pertinent circumstances."

To support this claim, Davis purports to provide a more accurate or complete summary of Officer Walker's testimony which states:

"15.  On direct examination, Officer Walker testified that he and a partner had responded to the area of Howard and 7th Street in response to a dispatch call and established a crime scene perimeter. Officer Walker collected and booked into evidence the screwdriver, the cufflinks, and the foreign money. Walker testified that he had not entered the residential unit before the suspect was removed by other officers.

"16.  Defense counsel's cross-examination of Officer Walker was centered upon the issue of where the coins, cufflinks and screwdriver had come from and what had

14

happened to the missing cash. Officer Walker said he was handed the three items by another officer, but was vague and/or evasive about the circumstances. For example, while Walker had no problems answering the questions asked on direct, on cross examination he claimed no recollection approximately 20 times.

"17. Officer Walker could not recall if he was the one who had strip searched Mr. Davis to look for the cash, though the fact that he had done so was stated in another officer's report. While admitting he had glanced at parts of the police report, Officer Walker claimed no memory of the conditions at the crime scene or who was with him at any particular time."

Davis contends that he was precluded from sharing these pertinent facts about Officer Walker with the superior court and was thereby deprived of his constitutional right to due process.[5] To remedy the alleged constitutional violation, Davis seeks a peremptory writ of mandate compelling that court to hold a new *Brady* hearing for which Davis will have notice, appointed counsel, and "a full opportunity to submit evidence and be heard on the issue of the potential materiality of the sealed documents."

## 2. *Analysis*

Unlike a post-judgment motion, a petition for writ of mandate "is an independent proceeding" that vests the court "with jurisdiction to act." (*Picklesimer, supra,* 48 Cal.4th at p. 339; see Code Civ. Proc., § 1085.) "To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) 'a clear, present . . . ministerial duty on the part of the respondent'; and (3) a correlative 'clear, present, and beneficial right in the petitioner to the performance of that duty.' [Citations.]" (*Picklesimer, supra,* 48 Cal.4th at p. 340.)

With respect to the first of these requirements, Davis contends that an appeal is not an adequate alternative remedy because his claim depends on evidence outside that

---

[5] For the record, we do not agree with Davis's self-serving interpretation of the cross-examination of Officer Walker or with his account of the testimony that Walker gave in *Davis I*.

15

record.  Aside from that, as we have already found, the October 1 order is not appealable by Davis.

Davis also contends that he cannot file his petition in the superior court because that court is "the party that failed to properly exercise its discretion."  The superior court does not have the authority or jurisdiction to issue mandamus or prohibition against itself.  "Mandamus or prohibition may be issued only by a court to another court of inferior jurisdiction."  (*Haldane v. Superior Court of Los Angeles County* (1963) 221 Cal.App.2d 483, 485-486; See Code Civ. Proc., §§ 1085, 1103.)  (*Ibid*.)  However, "[b]efore seeking mandate in an appellate court to compel action by a trial court, a party should first request the lower court to act.  If such request has not been made the writ ordinarily will not issue unless it appears that the demand would have been futile.  [Citations.]"  (*Phelan v. Superior Court of San Francisco* (1950) 35 Cal.2d 363, 372.)

In the present case, the allegations and evidence in support of the petition support the following facts:  (1) Before the People filed their *Brady* motion, Assistant District Attorney Jerry Coleman notified Erwin Fredrich, Davis's trial counsel in *Davis I,* about the potential *Brady* material in Officer Walker's file; (2) Coleman advised Fredrich that the People had not made a determination whether the information should have been disclosed in *Davis I* but, pursuant to their obligations under *Brady*, the People were notifying the defense about the file so it could make its own determination as to whether to "seek some sort of post-judgment relief"; (3) The People subsequently served Fredrich with notice of their *Brady* motion, and with copies of their motion and supporting documentation; (4) Fredrich attended the hearing on behalf of Davis and Davis's appearance at that hearing was waived.

The record also contains *disputed* evidence that Fredrich was formally reappointed to represent Davis at the October 1 hearing.  The minute order for the hearing reflects that reappointment.  However, Fredrich filed a declaration in support of this mandate petition in which he claims he was never reappointed.  According to that declaration, Fredrich "checked in" at the hearing but he "was not reappointed to represent Mr. Davis at that time and did not state an appearance as no proceedings took place on the record."

16

But Fredrich does not dispute that he was present at the hearing and that he was recognized by the court as Davis's attorney. Nor does Fredrich substantiate the allegation in the petition that Davis was denied the opportunity to participate in the *Brady* hearing. Rather, according to his declaration, Fredrich did not file a motion or request that Davis be allowed to participate in the *Brady* proceeding because he believed that the San Francisco Superior Court had a policy of refusing to allow such participation. However, there is no evidence before us that such a policy exists.

Thus, Davis has failed to establish or even allege that he made a request of the superior court to participate in the *Brady* proceeding or that such a request would have been futile. This fact alone is a ground for denying this petition. Beyond that, Davis has not met the other requirements for obtaining mandate relief by identifying a clear and present ministerial duty on the part of the superior court and his correlative clear and present beneficial right to performance of that duty. (*Picklesimer, supra*, 48 Cal.4th at p. 340.)

Here, Davis never squarely articulates the ministerial duty he attributes to the superior court. Instead, he makes the broad claim that the court abused its discretion by deciding the post-judgment *Brady* motion without first affording him "an opportunity to be heard on the issue," and that he "has a clear, present and substantial right to the performance of respondent's duty to exercise its discretion properly in ruling on the motion to disclose exculpatory evidence [in] police personnel files."

"A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act. [Citation.]" (*Picklesimer, supra*, 48 Cal.4th at p. 340.) "Although it is well established that mandamus cannot be issued to control a court's discretion, in unusual circumstances the writ will lie where, under the facts, that discretion can be exercised in only one way. [Citation.]" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 851.)

In this case, Davis takes the position that the superior court cannot properly exercise its discretion to resolve a post-judgment motion for *Brady* discovery unless it

17

conducts a noticed hearing at which the defendant is represented by counsel and offered the opportunity to present evidence and argument. Putting aside the fact that Davis's own evidence shows that he did have notice of the hearing, that counsel appeared at the hearing on his behalf and that he did not request the opportunity to participate, Davis fails to provide any legal authority which supports his claim that the superior court violated a clear and present duty.

As explained in our analysis above, a convicted defendant does not have a right to seek post-judgment discovery unless section 1054.9 applies. More to the point, Davis does not cite any authority which requires that the superior court elicit participation from a convicted defendant before ruling on post-judgment *Brady* motion filed by the People. Instead, Davis relies solely on general references to constitutional principles of due process and equal protection which are simply too vague to establish that the superior court violated a clear and present duty.

Though not directly on point, our conclusion finds support in *Alford v. Superior Court* (2003) 29 Cal.4th 1033 (*Alford*). The *Alford* defendants were charged with drug offenses and their account of the events leading to their arrest was different from the account offered by the arresting officers. (*Id*. at p. 1036.) Intending to challenge the credibility of those officers, the defendants sought *Pitchess* discovery of relevant material from the officers' personnel files. After the motion was denied, the Court of Appeal issued a writ of mandate directing the superior court to (1) grant disclosure of material information but limit dissemination of that evidence to the specific case, and (2) permit the prosecutor to "be heard" on the motion and receive the information that was disclosed. (*Id*. at p. 1037.) However, the Supreme Court reversed, finding that the People did not have the right to be heard at the defendant's *Pitchess* proceeding or to obtain copies of the defendant's *Pitchess* evidence. (*Id*. at p. 1044.)

The *Alford* court based its conclusions on several factors. First, the court observed that the statutory provisions governing *Pitchess* motions expressly require service of notice of the motion only on the governmental agency that has custody of the records sought. (*Alford, supra*, 29 Cal.4th at p. 1044; see Evid. Code, § 1043, subd. (a).)

18

Second, the court found that "general due process principles" entitle the People to notice of the date and place of the hearing on a defense *Pitchess* motion. (*Ibid*.) "In this manner," the court found, "if the court requires clarification or explanation of any matters set forth in the supporting affidavits, it will be able to ask questions of both the defense and the prosecution and thus obtain any information the court deems 'essential' to a fair and proper decision. [Citation.]" (*Id*. at p. 1044.) Third, however, the court found that neither the due process clause nor any other law entitles the People to "argue the prosecutorial point of view" or "to receive any information the court orders disclosed" in what is "essentially a third party discovery proceeding." (*Id*. at p. 1045.) In making this last point, the *Alford* court acknowledged that "[o]f course, the prosecution itself remains free to seek *Pitchess* disclosure by complying with the procedure set forth in Evidence Code sections 1043 and 1045. Absent such compliance, . . . peace officer personnel records retain their confidentiality vis-à-vis the prosecution. [Citations.]" (*Id*. at p. 1046.)

*Alford* establishes that prosecutors are not entitled to participate in a defendant's *Pitchess* motion, but they are entitled to notice, to be present and to participate if the trial court so desires. (*Alford, supra*, 29 Cal.4th at pp. 1044-1046; ) *People v. Superior Court (Humberto S*.) (2008) 43 Cal.4th 737, 750.) Although the court's analysis pertained to the People's due process right to participate in a defense *Pitchess* motion, many of the same principles apply when the roles are reversed.[6] The statutory procedure for conducting a *Pitchess* motion does not require service of notice on the defendant when the People bring that motion. (Evid. Code, § 1043, subd (a).) Furthermore, assuming that general due process principles entitle the defendant to notice of what could be considered a third party discovery proceeding, we have found no law entitling the defendant to participate in the People's *Pitchess* motion.

---

[6] One obvious distinction is that the People's agency relationship with investigative personnel implicates *Brady* obligations that the defendant does not have.

19

Davis advances two new theories in his Reply Brief filed in support of the petition. First, he argues that the relief he seeks derives solely from *Brady* and has nothing whatsoever to do with *Pitchess*. He contends that, although there is some overlap, the two procedures protect different rights for different trial participants and that the only procedure at issue in this case is the one afforded to him by *Brady* which guarantees him access to potentially exculpatory evidence.

We agree that *Brady* and *Pitchess* establish two distinct legal principles which sometimes overlap. This case involves such an overlap because the People used the *Pitchess* procedure to perform its obligations under *Brady*. *Brady* holds that the prosecutor's failure to disclose to the defense any evidence that is "favorable to an accused" and is "material" on either guilt or punishment violates the accused's constitutional right to due process. (*Brady, supra*, 373 U.S. at pp. 86-87.) But that case does not confer on the criminal defendant a due process right to participate in the People's *Pitchess* motion to discover material evidence from a police officer's confidential personnel files, particularly when that motion is made post-judgment. Nor does Davis identify any other authority which construes *Brady* as conferring on a defendant a constitutional right to participate in a third party proceeding initiated by the People in order to comply with its obligations under *Brady*.

"To the extent a prosecution-initiated *Pitchess* motion yields disclosure" of information that satisfies the *Brady* materiality standard, "the prosecutor's obligations, as in any case, are governed by constitutional requirements in the first instance. (*Alford, supra*, 29 Cal.4th at p. 1046, fn. 6.) "The prosecutor's duties of disclosure under the due process clause are *wholly independent* of any statutory scheme of reciprocal discovery. The due process requirements are self-executing and need no statutory support to be effective. . . . [I]f a statutory discovery scheme exists, these due process requirements operate outside such a scheme. The prosecutor is obligated to disclose such evidence *voluntarily*, whether or not the defendant makes a request for discovery." (*Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378.)

20

Davis repeatedly insists that he is not attempting to invoke pre-judgment *Pitchess* rights to secure post-judgment discovery. However, the petition allegations strongly suggest otherwise. The essence of the mandate claim alleged in Davis's petition is that the superior court had a duty to search Walker's files for evidence that would have supported what are essentially hindsight theories about how the defense could have used Walker's testimony in a different way in *Davis I* if given another opportunity. But, Davis did not pursue those theories by filing a *Pitchess* motion prior to judgment. Now, at this stage in Davis's case, the only post-judgment issue before the superior court is whether Walker's files contain *Brady* evidence that the People would have an ongoing obligation to produce.

Once again, Davis appears to be suggesting that the People violated *Brady* by failing to seek discovery from Walker's files before judgment was entered in *Davis I*. But that issue has nothing to do with the proceeding which resulted in the October 1 order. The People's post-judgment *Pitchess* motion for *Brady* discovery cannot be used to circumvent the very different procedures for pursuing a collateral attack on the judgment in *Davis I*.

A second related theory advanced in Davis's Reply Brief is that he should be excused from having to satisfy the normal requirements for securing a writ of mandate because this case is about "systemic misconduct by the San Francisco District Attorney's Office from 1963, when *Brady v. Maryland* issued, until 2010, when the San Francisco Police Department first prepared a list of officers who had potential impeachment material in their personnel files." According to this theory, for almost 50 years the District Attorney's office has been "in violation of due process of law" by its failure to disclose potentially exculpatory materials in police officer files, and this case should be viewed as part of that office's recent effort to "remediate that misconduct" by notifying the superior court of past cases in which *Brady* material was withheld from the defense. In light of these serious circumstances, Davis contends that he should be relieved of the normal requirements for securing a writ of mandate.

21

This broad claim of long-standing misconduct is not alleged in the petition itself or supported by the evidence produced to us.  Rather, this petition is clearly limited to the October 1, 2012, order filed in this specific case.  Davis seeks to compel the superior court to conduct a new hearing in a post-judgment *Brady* discovery proceeding in order to give him the opportunity to share his new defense theories at that hearing.  For all the reasons discussed above, Davis has failed to establish that he is entitled to that relief.

### IV.  DISPOSITION

The appeal in case No. 137800 is hereby dismissed.  The petition for a writ of mandate in case No. 139767 will be denied by separate order.

_____
Kline, P.J.

We concur:

_____
Richman, J.

_____
Brick, J.*

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:  Superior Court of San Francisco County

Trial Judge:  Hon. Angela Bradstreet

Attorney for Defendant and Appellant
Julio Davis                                    Susan D. Shors
                                               By appointment of the Court of Appeal
                                                under the First District Appellate Project
                                                Independent Case System

Attorney for Plaintiff and Respondent
The People                                     Kamala D. Harris
                                               Attorney General
                                               Dane R. Gillette
                                               Chief Assistant Attorney General
                                               Gerald A. Engler
                                               Senior Assistant Attorney General
                                               Seth K. Schalit
                                               Supervising Deputy Attorney General
                                               Laurence K. Sullivan
                                               Supervising Deputy Attorney General