Filed 4/21/15  P. v. Rey CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050725 |
| v. | (Super. Ct. No. FSB902573) |
| MICHAEL ANTHONY REY, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Harold T. Wilson, Jr., Judge.  Affirmed as modified.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Michael Anthony Rey was convicted of armed assault on a peace officer. The jury found true as sentencing enhancements that defendant personally and intentionally discharged a firearm, and personally used a firearm.

On appeal, defendant challenges the true finding on the personal and intentional discharge of a firearm enhancement. We conclude there was substantial evidence to support that finding, and we therefore affirm.

Defendant argues, and the Attorney General agrees, that the abstract of judgment must be amended to reflect defendant's presentence custody credits. We direct the trial court to make the necessary amendment.

Finally, defendant challenges the trial court's partial denial of his motion for personnel records under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). Having independently reviewed the sealed transcript of the *Pitchess* hearing, we conclude the trial court did not err in denying the motion in part.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

In the late evening of June 18, 2009, police officer Edward Andrade saw defendant and Ray Robledo, standing on a street corner in an area claimed by the West Side Verdugo 7th Street gang. Officer Andrade recognized defendant as an admitted member of that gang, and knew defendant was on probation. As Officer Andrade turned on his spotlight and accelerated his patrol car toward the intersection, defendant and Robledo ran up the street and into the backyard of a house. Officer Andrade approached the backyard gate on foot. When Officer Andrade reached the gate, he saw defendant inside the yard; defendant turned toward Officer Andrade in an aggressive manner and reached toward the front of his waistband. Although Officer Andrade did not see

anything in defendant's hands, he believed defendant was reaching for a gun; Officer Andrade could not see Robledo from where he was standing.

Officer Andrade heard a single gunshot and a whizzing sound near the side of his head. He retreated to his patrol car and called for backup. Officer Andrade then saw defendant and Robledo run out of the yard, but did not see anything in their hands.

Early the next morning, a revolver was found in a planter at the house next door to the house where defendant had hidden in the backyard. The revolver had one expended round in the cylinder. No shell casings, bullet strikes, or bullet fragments were recovered. Revolvers do not eject shell casings; spent shell casings remain in the gun.

James Kuinius, who lived two houses down from the scene of the shooting, testified that when defendant came to his house in the early evening of June 18, 2009, he had a revolver with him. Kuinius heard a gunshot around midnight. Several hours later, defendant returned to Kuinius's house and said he had just shot at a police officer. Defendant was initially excited and bragged about the incident, although he later changed his story and said the gun had accidentally fired when he threw it down.

After he was arrested, defendant agreed to speak with a police detective. During his first interview, defendant admitted he was with "Shorty" on the night of the incident; Shorty is Robledo's moniker. In a later interview, defendant claimed he knew nothing about a shooting or a gun, and said he was at a friend's house all night.

A criminalist and firearms expert for the prosecution testified the revolver found in the planter had no defects and functioned properly. The expert also testified it would not have been possible for the gun to have fired accidentally due to being thrown.

Defendant's expert on handgun safety and usage testified it was theoretically possible for the revolver to have discharged when it was thrown, if the hammer had been pulled back but not locked. Defendant's hands did not test positive for gunshot residue. The gunshot residue test was performed about 13 hours after the shooting; usually, gunshot residue remains on a shooter's hands for about six hours.

3

Defendant testified in his own defense. When Officer Andrade pulled up and shined his spotlight, defendant ran because he was carrying a loaded gun and there was an outstanding warrant for his arrest. Defendant denied shooting at Officer Andrade. Defendant testified he took the gun out of his pocket as he was running away from Officer Andrade and threw it over a fence. Defendant then heard what he thought was a gunshot, and believed Officer Andrade was firing at him. Defendant ran away from Officer Andrade again and hid in a backyard for about four hours, then went back to Kuinius's house (where he had been earlier in the evening). Defendant told Kuinius he was being chased by the police and his gun had gone off after he threw it, but denied ever saying he had shot at a police officer.

Defendant was charged with attempted murder of a peace officer (Pen. Code, §§ 187, subd. (a), 664, subds. (a), (e)), and assault with a firearm on a peace officer (*id.*, § 245, subd. (d)(1)). (All further statutory references are to the Penal Code.) As to both counts, the information alleged defendant personally used a firearm (§ 12022.53, subd. (b)), personally and intentionally discharged a firearm (§ 12022.53, subd. (c)), and committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)). A jury found defendant not guilty of attempted murder, but found him guilty of armed assault on a peace officer. The jury found the firearm sentencing enhancements true, but found the gang sentencing enhancement not true.

The trial court sentenced defendant to a total term of 28 years. The court sentenced defendant to the upper term of eight years for armed assault on a peace officer, with a 20-year enhancement under section 12022.53, subdivision (c). The court also imposed a 10-year enhancement under section 12022.53, subdivision (b), but stayed that portion of the sentence. The court awarded defendant 1,704 days of presentence custody credits: 1,482 days of actual credits and 222 days of good conduct credits.

Defendant timely appealed.

4

I.

*SUFFICIENCY OF THE EVIDENCE*

Defendant argues that there was insufficient evidence to support the sentencing enhancement under section 12022.53, subdivision (c), for personally and intentionally discharging a firearm. "In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60.)

There was substantial evidence to support the jury's finding that defendant personally and intentionally discharged a firearm. Defendant admitted he was carrying a loaded firearm while running away from Officer Andrade. Officer Andrade testified defendant turned aggressively toward him and reached toward his waistband. Officer Andrade heard one gunshot, and heard the sound of a bullet whizzing by his head. Kuinius testified that very early in the morning of June 19, defendant was excitedly bragging that he had shot at a police officer. This evidence was sufficient to support the true finding on the section 12022.53, subdivision (c) enhancement.

Defendant points to other evidence he claims defeats or trumps the foregoing. At best, defendant misapprehends the nature of the substantial evidence test.

5

The lack of gunshot residue on defendant's hands was not significant, given the amount of time that had passed between the shooting and the testing. The lack of a casing or shell at the scene of the shooting does not matter because a revolver, unlike a semiautomatic weapon, does not eject spent shell casings. Defendant's claim that the gun fired when he threw it was discredited by the firearms expert's testimony. While it is true that the expert was unable to state with a 100 percent certainty that the gun could not have fired in the way defendant claimed, it is so unlikely as to be, for all practical purposes, impossible. The lack of evidence of a bullet strike in the backyard gate or on vehicles in the driveway establishes only that the bullet did not hit those spots, not that defendant did not personally and intentionally discharge the firearm.

## II.

### PRESENTENCE CUSTODY CREDITS

The abstract of judgment does not reflect defendant's presentence custody credits. Defendant argues, and the Attorney General agrees, that the abstract of judgment must be amended to reflect defendant's presentence custody credits. Both defendant and the Attorney General agree that defendant is entitled to credit for a total of 1,704 days of presentence custody.

## III.

### PITCHESS MOTION

On a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information contained within the confidential personnel records of a peace officer accused of misconduct against the defendant. (*Pitchess*, *supra*, 11 Cal.3d 531.) The trial court must review the requested records in camera to determine what information, if any, should be disclosed. (*Chambers v. Superior Court* (2007) 42 Cal.4th 673, 679.) Upon proper request, the appellate court must review the confidential

6

records to ensure the defendant's right to discovery was properly discharged. (*People v. Prince* (2007) 40 Cal.4th 1179, 1285.) The request for discovery of the police officer's personnel records is committed to the discretion of the trial court; we review only to determine whether the trial court abused its discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039.)

In this case, the trial court released to defendant the names and addresses of two individuals from Officer Andrade's personnel file, but found the remaining information and documents in the file were not discoverable. Defendant requests that this court independently review the sealed record; the Attorney General agrees that we may do so.

We have reviewed the sealed transcript of the in camera hearing. The trial court described, on the record, the items produced by the custodian of records, which had been taken from Officer Andrade's personnel file, and questioned the custodian of records about those records. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 [the trial court is not required to place a photocopy of documents produced by the custodian of records in a confidential file, but may state for the record what documents it examined in camera].) The record shows the trial court confirmed that, with the exception of the two matters for which the names and addresses of the complaining individuals were provided, Officer Andrade's personnel file did not contain discoverable information. Consequently, the court did not abuse its discretion in ruling there was no discoverable information other than that provided to defendant and his trial counsel. The trial court did not abuse its discretion in partially denying defendant's *Pitchess* motion.

DISPOSITION

We direct the trial court to prepare an amended abstract of judgment crediting defendant with 1,704 days of presentence custody credits, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and

7

Rehabilitation, Division of Adult Operations.  In all other respects, the judgment is affirmed.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

BEDSWORTH, J., Concurring:

I continue to be mystified by the question of why *Pitchess* motions – alone in all of criminal law as far as I can determine – are immune from review by the appellate courts. We have done what is required of us in this case: we have read the transcript of the *Pitchess* hearing and determined it was conducted according to Hoyle. But we have no idea what was in the files reviewed.

I have signed the majority opinion under the compulsion of *People v. Myles* (2012) 53 Cal.4th 1181, *People v. Mooc* (2001) 26 Cal.4th 1216, 1229, and *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450. As presently expressed, California law seems to provide appellate review not of the *merits* of an in camera *Pitchess* hearing (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531), but only of the *procedures* followed. We have reviewed those procedures in this case and they are unobjectionable, so the majority opinion is correct.

But I don't think it's right. I cannot understand why this one area of criminal law provides for no meaningful review of the trial court's decision *on the merits*. It is beyond my ken that we provide appellate review of every other trial court decision, but choose not to provide it on this important issue of criminal discovery.

*People v. Myles, supra,* 53 Cal.4th at p. 1209, says, "The sealed transcript that is before us, in which the court 'state[d] for the record what documents it examined,' is adequate for purposes of conducting a meaningful appellate review." Under that interpretation of applicable precedent, the trial court does exactly what it did here: opens the file, recites its contents, tells us it finds nothing discoverable, and denies disclosure. We then receive a transcript that tells us "what documents [the court] examined." I am unable to understand how we can provide meaningful review under those circumstances.

1

There is simply no way to evaluate the trial court's decision on such a record. There could well be a complaint or a report we would consider discoverable. There could well be a dozen. We simply have no way of knowing. If we do not have copies of the documents in question, we cannot say whether the trial court has correctly assessed their import.

And I am unable to apperceive why providing copies of those documents presents a problem. It seems to me the trial court could easily order copies made of the documents it has reviewed and seal them. We could then review those copies and determine whether the trial court correctly exercised its discretion.

I don't mean to suggest in any way that I distrust the trial court's review in this case – or in cases in general. I spend a great deal of my time marveling at the ability of our trial bench to make a correct call in five minutes on issues I struggle with for five days. But recognizing the competence and bona fides of our trial bench and giving them broad discretion is a far cry from instituting a system in which they are the last word on a question. And since I don't find such final authority in other areas of the law, I question its wisdom here.

But I am at a loss to interpret *Mooc* and *Myles* in any other way. *People v. Mooc*, the foundation of the *Myles* language to which I take exception, was a case in which the appellate court, frustrated by its inability to conduct a meaningful *Pitchess* review without the documents in question, ordered the entirety of the officer's personnel files provided. The Supreme Court correctly noted that order did not cure the problem because the trial court had not indicated what files it reviewed, so there was no way to know what documents in the complete file had been before it during its *Pitchess* hearing. But, since it now had the officer's entire personnel file before it, it reviewed the file and ruled on the motion itself, rather than delay the case any further.

2

In doing so, the court recognized the availability of a procedure whereby the trial court "can photocopy [the documents it reviewed] and place them in a confidential file," (*People v. Mooc, supra,* 26 Cal.4th at p. 1229) but went on to say, "Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined." (*Ibid.*)  That is what the trial court did in this case, so I must sign the opinion.

Usually, when I come up against a result I find inexplicable, I go back over my work looking for the mistake that led me to that result.  Usually I find it.  But I can't find it here.  There are cases I can distinguish.  In *People v. Prince* (2007) 40 Cal.4th 1179, 1285-1286, for example, the court approved the procedure here, but did so in a case in which the record included "a full transcript of both segments of the in camera hearing and the documents that formed the basis for the court's conclusion that defendant was not entitled to the complaints that had been filed against [the officer]." (*Ibid.*)  And I can find cases where the issue was considered only in passing, or in which the rule was stated without discussion.  But I cannot find anything on which I could hang a dissent.

I can only do what I do here:  Articulate my concern that our review of in camera *Pitchess* hearings does not go far enough, urge trial courts to include copies of the documents reviewed, as suggested in *Mooc*, and express my hope the Supreme Court will either correct our misunderstanding of the state of the law or reconsider its position.


BEDSWORTH, J.

I CONCUR:


THOMPSON, J.

3